## Standard Packaging Corporation v. Julian Goodrich Architects, Inc., Julian W. Goodrich and Patricia Goodrich v. Carpenter Supply Company, Inc. and Gouverneur Iron Works

[392 A.2d 402]

No. 173-77

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed September 11, 1978

*Anthony B. Lamb* of *Paul, Frank & Collins, Inc.*, Burlington, for Plaintiff.

*Howard J. Seaver*, Law Office of *Donald E. O'Brien*, Burlington, for Goodrich.

*Allan R. Keyes* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Carpenter.

*Barbara E. Cory* of *Dinse, Allen & Erdmann*, Burlington, for Gouverneur.

**Billings, J.** This action was commenced by a complaint brought by plaintiff-appellant Standard Packaging Corporation (hereinafter Standard) against defendants-appellants Julian Goodrich Architects, Inc., Julian W. Goodrich and Patricia A. Goodrich (hereinafter Goodrich) in January, 1972, for damages resulting from the collapse of portions of a building located in St. Albans, Vermont, in January and February of 1969. The building was designed and built by Goodrich on Goodrich land for lease to Standard's assignor, Fonda Container Company, Inc., pursuant to a Land, Building and Lease Agreement dated July 9, 1963 (hereinafter 1963 Agreement), and was completed and accepted in July, 1964. Among other things, the 1963 Agreement provided that Goodrich, after one year had elapsed, would be liable for any damage caused by defects due to faulty materials, equipment or workmanship only to the extent that Goodrich could recover for damage caused by such defects under a warranty or guarantee made by a third party.

On August 8, 1974, Standard and Goodrich entered into a Settlement Agreement. The Settlement Agreement (hereinafter 1974 Agreement) provided *inter alia* that Goodrich would start actions against the subcontractors allegedly responsible for damage to the building, with the net recovery to be divided equally between Standard and Goodrich. Also, the 1974 Agreement limited Goodrich's liability to Standard to one-half of this net recovery.

On September 10, 1974, Goodrich commenced third-party actions against two subcontractors, third-party defendants-appellees Carpenter Supply Company, Inc. (hereinafter Carpenter) and Gouverneur Iron Works (hereinafter Gouverneur). In the complaint against Carpenter, Goodrich alleged that pursuant to a contract made in October, 1963, Carpenter installed a sprinkler system in the involved building. Goodrich further alleged that Carpenter breached its contract "and with gross and willful negligence deliberately and intentionally" bent a portion of the structural steel support for the roof to accommodate the installation of the sprinkler system. The complaint stated that as a result the structural strength of the support system was severely damaged with a portion of

the roof collapsing on January 15, 1969. Only then, Goodrich claimed, were the damaged supports discovered.

In its complaint against Gouverneur, Goodrich alleged that pursuant to a contract made in July, 1963, Gouverneur installed structural steel columns to support the roof of the dock portion of the involved building. The complaint further charged that Gouverneur breached its contract by installing the columns "out of line and not perpendicular resulting in an eccentric load." Because of this breach, Goodrich claimed that the columns were inadequate to support the roof, which collapsed on February 10, 1969. The time of the collapse, Goodrich stated, was when the defective construction was first discovered.

Both third-party complaints charged that the subcontractors "actively concealed" the defective work, which "was not apparent to [Goodrich] in the exercise of reasonable diligence and was a latent rather than a patent defect." Each complaint asked for indemnification for any damages for which Goodrich was liable to Standard and "alternately without regard to a right in indemnity" for the full damage to the building for which each subcontractor was respectively responsible.

On February 24, 1976, Standard moved to amend its complaint to add direct claims against Carpenter and Gouverneur. The motion was granted on March 25, 1976.

Carpenter and Gouverneur each pleaded the statute of limitations as a defense to the claims made by Goodrich and Standard against them. In January, 1977, the trial court held a hearing for argument by counsel on the issues raised by the statute of limitations. At the hearing, the parties stipulated to the admission of the 1963 Agreement and the 1974 Agreement. Goodrich argued that its third-party complaints sufficiently alleged fraudulent concealment to toll the statute of limitations until the alleged discovery of the cause of action in 1969. 12 V.S.A. § 555. Standard requested leave to amend its amended complaint against Carpenter and Gouverneur to allege fraudulent concealment, which the trial court denied.

In its order dated May 17, 1977, the trial court dismissed both Standard's and Goodrich's complaints against the subcontractors. Standard's claims were dismissed on the ground that they were effectively made in 1976 after the applicable

statute of limitations, 12 V.S.A. § 511 (six years), had run since the amended complaint did not relate back to Standard's original complaint in 1972. In dismissing Goodrich's claims, the trial court construed the 1963 and 1974 Agreements to limit Goodrich's liability to Standard only to those defects in materials, equipment or workmanship discovered within the first year of the lease. Because the building collapsed in 1969, after the expiration of that year, the trial court concluded that Goodrich could have no liability to Standard. Therefore, the court concluded: "The third party action by Goodrich against Gouverneur and Carpenter being derivative in nature and being based upon potential or possible liability by Goodrich to Standard, the third party complaint must fail." Both Standard and Goodrich appeal.

■ On appeal, Standard claims that its amended complaint against Carpenter and Gouverneur relates back to its original 1972 complaint and that the trial court should have permitted Standard to amend its amended complaint to allege fraudulent concealment by the subcontractors. V.R.C.P. 15(c) governs the relation back of amended pleadings. Among its requirements, the Rule states that an amendment changing the party against whom a claim is asserted relates back only if the party "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him." This requirement generally embraces cases of misnomer, and cases where a defendant has misrepresented his identity or concealed his identity to exploit pleading errors, until the running of the statute of limitations. 3 J. Moore, Federal Practice ¶¶ 15.15 [4.-1], 15.15[4.-2], at 1046–47, 1050 (2d ed. 1974). No mistake, either in the narrow sense of misnomer or in the broader sense of misrepresentation or concealment by the subcontractors, has been urged by Standard, nor is there any evidence suggesting that such a mistake was made by Standard. Therefore, Standard's amended complaint does not relate back to 1972 under V.R.C.P. 15(c). Because the amended complaint was filed in 1976, more than six years after the alleged date of discovery of the cause of action by Standard in 1969 when the building collapsed, an allegation of fraudulent concealment in the complaint, to toll the statute of limitations until dis-

covery, would be of no aid to Standard. Any error by the trial court in refusing to allow Standard to amend its amended complaint to plead fraudulent concealment is thus harmless.

The claims by Standard against Carpenter and Gouverneur are barred by the statute of limitations, 12 V.S.A. § 511, and such is the case under both theories recently espoused by various members of this Court as to the date that the statute of limitations commences to run. See *South Burlington School District* v. *Goodrich,* 135 Vt. 601, 382 A.2d 220 (1977) (majority—when act upon which legal action is based occurs; minority—when such act is or should have been discovered). The trial court correctly dismissed Standard's claims against the subcontractors.

Goodrich argues on appeal that its third-party complaints against Carpenter and Gouverneur pleaded direct causes of action, in addition to derivative causes, and that these claims are not barred either by the 1963 and 1974 Agreements or by the statute of limitations. Also, Goodrich argues that it has direct causes of action against Carpenter and Gouverneur as an assignee of Standard. Goodrich does not argue that the trial court erred in dismissing the derivative claims, and this ruling must stand. *Wells* v. *Village of Orleans, Inc.,* 132 Vt. 216, 224–25, 315 A.2d 463, 468 (1974).

Each third-party complaint clearly states two separate claims against each subcontractor, an indemnity claim and a direct claim for breach of contract. The 1963 and the 1974 Agreements are both between Goodrich and Standard. Neither Agreement can be read to preclude a direct action by Goodrich against the subcontractors. To the contrary, the 1974 Agreement specifically provides for such actions. On the other hand, there is no language in either Agreement assigning any claims from Standard to Goodrich. In summary, Goodrich neither gained nor lost any direct claims against Carpenter and Gouverneur as a result of the 1963 and the 1974 Agreements.

Carpenter and Gouverneur argue that the statute of limitations bars any direct claims by Goodrich. Goodrich, however, claims that both third-party complaints alleged fraudulent concealment, which if established would toll the statute of limitations until the time of discovery of the cause, 12 V.S.A.

§ 555, allegedly 1969, and bring the third-party complaint within the six year limitations period here applicable. 12 V.S.A. § 511.

■■ Fraud must be stated "with particularity," V.R.C.P. 9(b), and it must consist of some affirmative act, or of concealment of facts by one with knowledge and a duty to disclose. *Town of Troy* v. *American Fidelity Co.*, 120 Vt. 410, 423–24, 143 A.2d 469, 477–78 (1958). In each third-party complaint, Goodrich alleged defective construction done by each subcontractor. Also, each complaint charged that the subcontractors actively concealed the defective work and that such work was latent and not apparent to Goodrich in the exercise of reasonable diligence. This is sufficient to raise the issue of fraudulent concealment, and Goodrich is entitled to a hearing on this issue.

*The dismissal of the complaints by Standard Packaging Corporation against Carpenter Supply Company, Inc. and Gouverneur Iron Works is affirmed. The dismissal of the complaint by Julian Goodrich Architects, Inc., and Julian W. Goodrich and Patricia Goodrich is reversed. The cause is remanded for further proceedings consistent with the views expressed herein.*