**In re Jo Rosenberg JOY**

[605 A.2d 850]

No. 91-567

February 26, 1992. Pursuant to the recommendation of the Professional Conduct Board filed December 10, 1991, and approval thereof, it is hereby ordered that Jo Rosenberg Joy, Esq., be disbarred for the reasons set forth in the Board's Notice of Decision attached hereto for pub-

lication as part of the order of this Court. A.O. 9, Rule 8E.

## NOTICE OF DECISION
## PCB NO. 22

### Procedural History

A petition of misconduct issued in this case on October 11, 1991. Respondent replied on October 25, 1991 by stating that she did not wish to contest the allegations contained in the petition. Respondent also offered to surrender her license to practice law.

There are no procedures in Administrative Order No. 9 by which a respondent can plead "no contest" to a petition of misconduct. Respondent has been advised that her options are to admit or deny the petition and that if she failed to answer the petition, the Board would deem the allegations admitted in accordance with Rule 8C. Respondent was also advised prior to institution of formal proceedings that she could voluntarily resign from the bar if she complied with Rule 16. Although respondent offered to resign, she failed to comply with the provisions of Rule 16.

Respondent's statement and answer makes it clear that she does not intend to contest the allegations of the petition even though she believes some of the allegations to be false. Therefore, in accordance with Rule 8C, the Board will deem the allegations to be admitted. The Board finds the following facts:

### Facts

1. Respondent was admitted to the Vermont Bar in 1983. Until June of 1991 when respondent closed her law office, she was a solo practitioner in Burlington, Vermont.

2. On September 10, 1985, one Maureen Rice was injured in an automobile accident when her car was hit in the rear by another. She sustained permanent injuries to her back, suffered a loss of wages, and other damages.

3. Shortly thereafter, Ms. Rice retained respondent to represent her in her personal injury claim against the driver who had caused the accident. Respondent agreed to handle the case on a contingency basis.

4. Although respondent promptly notified the insurance carrier for the tortfeasor that Ms. Rice had been injured and was seeking compensation from the insurance carrier, respondent did not follow through by supplying medical documentation of these injuries to the carrier. In May of 1987, the carrier advised respondent that unless she filed a demand or additional medical information, the company would close its file on this case.

5. Respondent did not reply to this letter until six months later. Respondent then sent a demand letter to the insurance company seeking $100,000 in damages.

6. The insurance company responded promptly. By letter of December 7, 1987, the insurance company requested that respondent's client submit to an independent medical examination by Dr. Ford, a Burlington physician.

7. At about the same time, Ms. Rice wrote to respondent, gave respondent the name of her doctor, and asked respondent to contact her as soon as she heard anything.

8. Respondent did not respond to either her client or the insurance company.

9. In January of 1988, Ms. Rice wrote to respondent advising her of her medical progress and requesting information about her case. Respondent did not answer this letter.

10. In April of 1988, Ms. Rice wrote again to respondent, recounting her difficulties with reaching respondent by telephone and requesting information as to the status of her case. Ms. Rice expressed concern as to whether the "deadlines" in her case had been met. She asked respondent to please respond. Respondent did not do so.

11. Ms. Rice continued to telephone respondent's office periodically in order to speak with respondent. Respondent did not accept or return any of Ms. Rice's phone calls.

12. It was not until late August of 1988 that Ms. Rice learned that the insurance company had requested an independent medical examination. She learned this through a conversation with respondent's receptionist. The receptionist told Ms. Rice that respondent was attempting to set up a medical examination in southern Vermont where Ms. Rice lived.

13. Ms. Rice wrote to respondent on August 29, 1988, recounting this information, and asking that respondent contact her to discuss the case. Respondent did not answer this letter or telephone Ms. Rice.

14. Ms. Rice sent several other letters to respondent seeking information. These requests were ignored. Respondent did not even open one of Ms. Rice's letters.

15. Respondent never filed a lawsuit on Ms. Rice's behalf. On September 11, 1988, the three year statute of limitations on Ms. Rice's right of action against the driver of the vehicle expired.

16. On October 12, 1988, respondent finally responded to the insurance company's letter of December 7, 1987. Respondent stated that her client had relocated to southern Vermont and asked if there was a physician there who could conduct the independent medical examination. On that same day, respondent wrote to her client, advising that the insurance company was trying to identify a physician in the Manchester area who would conduct the independent examination.

17. The insurance company wrote to respondent on November 14, 1988 advising that the medical examination would have to occur in Burlington. It also noted that the medical bills received totaled only $267 and that only $2,280 in lost wages had been documented.

18. Respondent had in her file medical bills totalling $1,737 which she had failed to submit to the insurance company. In addition Ms. Rice had other expenses which respondent had failed to document.

19. In March of 1989, the insurance company realized that Ms. Rice's claim had been tolled by the statute of limitations. On March 15, 1989, the insurance company wrote to respondent, advising her of this fact and that the company was closing its file on this matter.

20. Respondent did not inform her client that the insurance company had closed its file or that she had failed to file a lawsuit before the statute of limitations had tolled.

21. In the meantime, respondent had been charged with a disciplinary violation as a result of a complaint filed by another client. In that matter, an out-of-state company had retained respondent in September of 1986 to pursue a collection action on its behalf. Respondent had failed to respond to repeated requests from the client for information as to the status of the case. The client eventually terminated the relationship and requested return of all documents so that another Vermont attorney could

handle the matter. Despite three requests for the documents over a seven-month period, respondent failed to return the documents. A hearing panel of the Professional Conduct Board heard this case on June 2, 1989.

22. On October 24, 1989 the Professional Conduct Board notified respondent in writing that the Board had found her to be in violation of DR 6-101(A)(3) (neglect) and that, in consideration of mitigating circumstances, had issued a private admonition.

23. In January of 1990, Ms. Rice finally drove to Burlington to meet with respondent personally and to learn of the status of her case. Respondent was not truthful during this meeting, partly because of her fear that another disciplinary complaint would be filed against her.

24. Respondent did not tell Ms. Rice that respondent had failed to file a lawsuit or that the insurance company had closed its file on the matter. Instead, respondent apologized for not keeping Ms. Rice up to date. Respondent told Ms. Rice that the insurance company would not settle and that her court date would be coming up soon. Ms. Rice asked for a copy of her file, including copies of correspondence with the insurance company. Respondent replied that she was too busy and that the file was too voluminous for her to make the copies, but that she would have the information copied and mailed to Ms. Rice. Respondent failed to do so, despite a follow-up request from Ms. Rice for the documents.

25. Subsequently, Ms. Rice learned from another source that respondent had failed to file a lawsuit on her behalf prior to the expiration of the three year statute of limitations.

26. In November of 1990, respondent wrote to the Professional Conduct Board, advising that she had missed a statute of limitations in a case and expressing remorse for her conduct. She acknowledged that she had no professional liability insurance. She stated that she had decided to leave the practice of law entirely.

27. Approximately one month later, Ms. Rice filed this complaint with the Board.

28. Ms. Rice was significantly injured by respondent's conduct.

29. Respondent ceased practicing law on May 31, 1991 when she closed her office after finding substitute counsel for her clients. She has stated that she does not wish to engage in the practice of law and has no intention of ever returning to the practice of law. She has voluntarily offered to surrender her license and has asked the Supreme Court to issue an order reflecting that respondent voluntarily relinquished her right to practice law in the state of Vermont.

### Conclusions of Law

The Board concludes that respondent violated DR 1-102(A)(4) (conduct involving fraud, dishonesty, deceit, misrepresentation), DR 1-102(A)(7) (conduct that adversely reflects on a lawyer's fitness to practice law), DR 6-101(A)(1) (handling a legal matter which the lawyer is not competent to handle), DR 6-101(A)(2) (handling a legal matter without preparation adequate in the circumstances), DR 6-101(A)(3) (neglecting a legal matter entrusted to the lawyer).

### Recommendation

In recommending a sanction to the Supreme Court, the Board is mindful of Standard 4.41 of the ABA's Standards for Imposing Lawyer Sanctions. That standard provides,

Disbarment is generally appropriate when:

(a) A lawyer abandons the practice and causes serious or potentially serious injury to a client; or

(b) A lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

(c) A lawyer engages in the pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

The Board finds that respondent abandoned Ms. Rice and then lied to her about the status of her case. Respondent knew of her obligations to Ms. Rice and failed to fulfill them. Because of respondent's abandonment of her case, Ms. Rice was precluded from pursuing legal remedies in court. Respondent compounded the error by lying to her client about the status of her case.

This is the second time that the Board has sanctioned respondent for neglecting a client. Respondent obviously recognizes that she is not suited for the practice of law. The Board agrees and recommends disbarment.