### In re William HUNTER, Esq.

[769 A.2d 1286]

No. 99-534

December 28, 2000. Respondent William A. Hunter appeals from the recommendation of the Professional Conduct Board that he be disbarred as a result of engaging in illegal conduct involving a serious crime in violation of DR 1-102(A)(3) of the Code of Professional Responsibility. He contends that the Board erred (1) by failing to consider his mental disability as a mitigating factor, (2) by failing to address the evidence respondent presented on seven other mitigating factors, and (3) by failing to explain why disbarment is the appropriate sanction to protect the public. We adopt the Board's recommendation and disbar respondent effective October 5, 1998.

The parties stipulated to the facts before the Board. On June 17, 1998, respondent pled guilty to one felony count of mail fraud in the United States District

Court for the District of Vermont. On October 5, 1998, the court entered a felony conviction against respondent. The conduct at issue involved mishandling of client funds and misrepresentations about those funds during the period from 1993-1996. Respondent repeatedly deposited client funds in his personal account or his general office account when these funds should have been held in respondent's client trust account on behalf of clients. In many instances, respondent used client funds in his office or personal account for personal expenses, and he also used funds in the client trust account for his personal benefit. The parties' stipulation of facts details eleven separate matters in which respondent mishandled client funds, illustrating that respondent repeatedly used client funds without the permission of the client and lied to clients, attorneys and a probate judge to cover up his misconduct.

Pursuant to A.O. 9, Rule 14(D) (Cum. Supp. 1998) (formal proceedings after conviction for serious crime), special bar counsel filed a petition of misconduct against respondent. There was no dispute that respondent was convicted of a serious crime. The only issue before the Board was the sanction to be imposed for the undisputed conduct. The Board's decision was based on the parties' stipulation of facts and the testimony of respondent and two expert medical experts, one proffered by each side, concerning whether respondent had a mental disability that mitigated the misconduct. Applying the ABA's Standards for Imposing Lawyer Sanctions, the Board concluded that disbarment was appropriate under three separate standards. See ABA Standards for Imposing Lawyer Sanctions Standard 4.61 (disbarment appropriate when lawyer knowingly deceives client with intent to benefit lawyer or another, and causes serious injury or potentially serious injury to client); Standard 5.1 (disbarment appropriate when lawyer engages in serious criminal conduct or intentional conduct involving dishonesty, fraud, deceit or misrepresentation that adversely reflects on lawyer's fitness to practice law); Standard 6.1 (disbarment appropriate when lawyer makes false statement with intent to deceive court).

Further, the Board found several aggravating factors: (1) respondent has a significant record of prior discipline, (2) respondent acted with a dishonest or selfish motive, (3) respondent exhibited a pattern of misconduct, (4) respondent is responsible for multiple offenses, and (5) the victims of respondent's misconduct were vulnerable. See ABA Standards, *supra*, Standard 9.2 (listing factors that may be considered aggravating and justifying increase in degree of discipline to be imposed). It considered but rejected several mitigating factors advanced by respondent. First, the Board rejected respondent's claim that he was motivated by a genuine desire to help people obtain financing because it had previously found that respondent had a dishonest or selfish motive for much of the misconduct. Second, the Board rejected respondent's claim that his mental disorder, attention deficit disorder (ADD), be considered a mitigating factor. It concluded that ADD would explain a disorganized practice and neglect of client matters, but did not explain repeated use of clients' money without permission, lying to clients, attorneys and judges, and covering up the misconduct to protect himself. Third, the Board rejected respondent's claim that he has been rehabilitated by obtaining professional help and taking medication for ADD because addressing his ADD is not rehabilitative of the misconduct that is not attributable to the mental disability. The Board found no credible evidence that respondent had learned from his mistakes and now has the ability to handle client funds in a responsible manner. In view of the aggravating factors and the absence of mitigating factors, the Board

unanimously concluded that disbarment is the appropriate sanction.

Although we make the ultimate decision on discipline, we accord deference to the Board's recommendations. See *In re Berk*, 157 Vt. 524, 527-28, 602 A.2d 946, 948 (1991). Before this Court, respondent raises three issues. He contends first that the Board erred in failing to consider his mental disability as a mitigating factor. He concedes: "No one has suggested that ADD was a direct cause of the infractions." He contends, however, that the Board's past decisions have recognized a mental impairment as a mitigating factor without requiring a showing that the mental impairment caused the misconduct. We have held otherwise.

In *In re Hunter*, 167 Vt. 219, 224-25, 704 A.2d 1154, 1157 (1997), respondent argued that ADD caused the disorganization of his practice which resulted in the many instances in which he neglected client matters. We rejected this claim because the evidence did not show that ADD caused respondent's most egregious misconduct, misappropriation of client funds by loaning them to other clients without permission to do so. See *id.* at 225, 704 A.2d at 1157. In so ruling, we adopted the ABA Standard requiring that the respondent show direct causation between the mental disability and the offense before the mental disability may be considered as a mitigating factor. See *id.*; ABA Standards, *supra*, Standard 9.3(i)(2) and commentary (1992 amendments). Other courts have similarly required a showing of causation before considering a mental disability as a mitigating factor. See, e.g., *State ex rel. Oklahoma Bar Ass'n v. Busch*, 976 P.2d 38, 56 (Okla. 1999) (rejecting respondent's claim that ADD mitigated his misconduct because "there is no causal connection between respondent's condition and the ethical violations in contest"). Thus, we reject respondent's contention that he need not show that the mental disability caused the misconduct.

As in respondent's previous disciplinary proceeding, we conclude again that ADD does not explain respondent's most egregious conduct: (1) loaning client funds to other clients without permission, (2) lying to clients, attorneys and a judge about client funds, and (3) using client funds to make loans and payments for his personal benefit. Indeed, respondent presented no evidence that ADD caused this misconduct. His treating psychiatrist, who testified as his medical expert, testified that ADD does not explain respondent's lies to clients about their funds. Accordingly, we agree with the Board that ADD is not a mitigating factor to this misconduct.

Second, respondent contends that the Board erred in failing to address seven other mitigating factors upon which he presented evidence. Despite the Board's statement that respondent advanced two mitigating factors, the Board's decision addresses many of the factors respondent advances as mitigating. Respondent contends that the Board failed to address as mitigating factors: (1) that he had personal and emotional problems, (2) that he made timely, good faith efforts to make restitution, (3) that he made a full and free disclosure of his conduct to the disciplinary board, (4) that he has a good character and reputation, (5) that he has in the interim been rehabilitated, (6) that other sanctions have been imposed for the misconduct, and (7) that he has shown remorse.

On the contrary, the Board explicitly rejected his claim of rehabilitation because addressing his mental illness did not address the most egregious misconduct, which was not attributable to the mental illness. The Board's decision also implicitly rejects any contention that respondent has shown remorse, as it found that his claim that he had learned from past mistakes was not credible. In addition, although the Board's decision did not explicitly consider as mitigating fac-

tors whether respondent had personal and emotional problems or whether other sanctions were imposed, these factors are apparent in the Board's decision, and we have no doubt that they were taken into account in the discipline recommendation. See *People v. Goldstein*, 887 P.2d 634, 642 (Colo. 1994) (consideration of respondent's other sanctions and emotional problems apparent from board's findings that respondent was convicted of felony and sentenced to three years probation and continued mental health counseling for emotional disorder he alleged responsible for the misconduct). Further, as in *Goldstein*, the other sanctions imposed for the criminal conviction, a two-year probationary sentence and 200 hours of community service, are not so severe as to create a mitigating factor. See *id.* at 643 (rejecting sanction on criminal conviction as mitigating where respondent was placed on probation for three years and ordered to perform 150 hours of community service; finding case distinguishable from prior case where factor was mitigating because respondent was not directly responsible for securities fraud but was imprisoned for more than a year).

We also reject respondent's claim that his good character and reputation are mitigating. In respondent's previous disciplinary proceeding, we stated that "any mitigating effect that good character and reputation evidence might have on the Board's choice of sanction is necessarily diminished when, as here, the attorney has been previously disciplined." See *Hunter*, 167 Vt. at 227, 704 A.2d at 1158. In light of respondent's continuing and escalating pattern of misconduct, as well as the multiple offenses, such evidence would have little or no effect on the discipline imposed here.

Respondent's contention that we should consider as mitigating factors that all clients have been made whole, and that he made full and free disclosure to the disciplinary board, are compromised by the multiple disciplinary proceedings. The misconduct in this case was occurring during the proceedings for the previous case, and thus, it is not clear at all that respondent made full and free disclosure to the disciplinary board, for example by self-reporting, nor that he made restitution before disciplinary proceedings were initiated. See ABA Standards, Standard 9.32 commentary (lawyers who make restitution before initiation of disciplinary proceedings present best case for mitigation). In sum, we agree with the Board that there are no clearly mitigating factors in this case.

Finally, respondent contends that disbarment is not consistent with the primary purpose of lawyer sanctions, which is to protect the public. He contends that all the misconduct upon which this proceeding is based happened before he was diagnosed and treated for ADD. Respondent maintains that he has since made tremendous positive changes in his life, and thus, disbarment is not necessary at this point to protect the public. Respondent relies on two cases.

In *Iowa Supreme Court Board of Professional Ethics & Conduct v. Erbes*, 604 N.W.2d 656 (Iowa 2000), the lawyer was charged with neglecting clients' matters and failing to cooperate with the investigation into those matters by the disciplinary authority. Because the lawyer: (1) had successfully addressed his depression with counseling and medication, (2) had consequently completely transformed his office to meet his high standards, (3) had learned from his experience, and (4) posed no current threat to the public, the court determined that a public reprimand was the appropriate sanction. *Id.* at 658-59. This case is inapposite. First, in *Erbes*, the lawyer's misconduct was caused by his mental illness, and thus, addressing the mental illness was rehabilitative. Second, the charges of neglect against the lawyer in *Erbes* were far less serious than the charges of intentional deceit here.

Most importantly, however, the Board in *Erbes* concluded that Erbes was no longer a threat to the public. In this case, we cannot reach this conclusion.

The other case upon which respondent relies, *Cincinnati Bar Ass'n v. Stidham*, 733 N.E.2d 616 (Ohio 2000), is also distinguishable. In that case, the lawyer was charged with multiple offenses involving mishandling of client funds, generally caused by his severe depression. The court found numerous factors mitigating against the board's recommendation of indefinite suspension. First, the lawyer had no prior disciplinary record. Most importantly, the court found that he was being treated for the depression that caused the misconduct, and that he had changed his office and accounting practices to prevent future problems. None of these factors is present here.

We agree with respondent that "disciplinary sanctions are not intended to punish attorneys, but rather to protect the public from harm and to maintain confidence in our legal institutions by deterring future misconduct." *Hunter*, 167 Vt. at 226, 704 A.2d at 1158. We have, however, already imposed the maximum sanction short of disbarment for other conduct of respondent, and the misconduct here is more serious than that we have found in the past. As we noted above, some of the misconduct involved here occurred while the last disciplinary action was pending, indicating that the last sanction or its threat was inadequate to deter continuing misconduct.

We conclude that disbarment is the appropriate sanction to protect the public. Respondent engaged in serious criminal conduct, misused clients funds for his own benefit, and lied to clients, attorneys and the court to cover up his misconduct. The ABA Standards for Imposing Lawyer Sanctions recommend disbarment for each of these actions. We are not persuaded that there are any overriding mitigating factors in this case — ADD cannot

be considered the cause of the most egregious conduct — and there are certainly several aggravating factors. Moreover, all of the misconduct is directly related to respondent's practice of law. Accordingly, we agree with the Board's recommendation that respondent be disbarred. See *Goldstein*, 887 P.2d at 644 (attorney disbarred for deceitful conduct in handling legal matters despite claims that mental disorder contributed to misconduct); *Florida Bar v. Clement*, 662 So. 2d 690, 699 (Fla. 1995) (attorney disbarred for misuse of client funds where referee found that mental illness did not cause misconduct); *Busch*, 976 P.2d at 56 (attorney disbarred for misuse of client funds where court found no causal connection between misconduct and ADD).

The Board recommended that disbarment be effective October 5, 1998, the date of respondent's conviction. Because neither party has contested this date, we accept the recommendation of the Board.

*Respondent William A. Hunter is hereby disbarred, effective October 5, 1998.*