2011 VT 77

# In re Margaret Strouse, Esq.

[34 A.3d 329]

No. 10-053

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed July 15, 2011

*Michael Kennedy*, Disciplinary Counsel, Burlington, for Petitioner.

*Joel B. Harris* and *Ross Feldmann* of *Gravel and Shea*, Burlington, for Respondent.

¶ 1. **Per Curiam.** In this case, we review, on our own motion, a decision of a Hearing Panel of the Professional Responsibility Board, which concluded that respondent, Margaret Strouse, engaged in deceit, violating Rule 8.4(c) of the Vermont Rules of Professional Conduct. The Panel imposed a sanction suspending respondent from the practice of law for six months. By our order, the Office of Disciplinary Counsel has been designated appellant. Disciplinary counsel argues that we should uphold the finding of a violation of the disciplinary rule, but that the sanction is too lenient, and respondent should be disbarred. Respondent argues that the finding of a violation should be reversed, and if upheld, the sanction should be reduced to a reprimand. We affirm the finding of a violation and impose a public reprimand.

¶ 2. The relevant facts are not in dispute. Respondent was admitted to practice law in Vermont in 2001 and was hired to work for a Burlington law firm in January 2006. In November 2007, a client hired the firm to represent her in a divorce from her then-husband. In early February 2008, before becoming aware of her firm's representation of the client, respondent met the client's husband and began dating him. On or about February 19, 2008, respondent saw her firm's client list and realized that she was dating the husband of her firm's client and that the firm was representing the client in a divorce proceeding against the husband. Within several hours of discovering this information, respondent informed the firm's senior attorney that she had recently become romantically involved with the husband. Respondent re-

quested that the firm create a "conflict wall," which she believed would prevent her from participating in any representation of the client and allow her to continue dating the husband.

¶ 3. The day after meeting with respondent to discuss her conflict, the senior attorney left respondent a message indicating that respondent's employment would be terminated if she refused to end her relationship with the husband. The next day, respondent told the senior attorney that she had terminated the relationship. In reliance on this representation, the senior attorney disclosed the situation to the client. After consulting with another lawyer, and relying on the senior attorney's representation that respondent had terminated the relationship with her husband, the client decided to continue using the firm to represent her in the divorce.

¶ 4. However, respondent did not entirely cease contact with the husband. On February 26, 2008, she ordered a gift of chocolates to be delivered to the husband. At some point between February 21 and March 8, 2008, respondent and her children spent time with the husband and his children at a local health club pool. Respondent and the husband were also together on other occasions during this period.

¶ 5. On March 8, 2008, the client left the state to seek treatment for her health. The client and her husband had previously negotiated an agreement stating that the husband could move into the marital home to care for the children in the client's absence. On the same day that the client left for treatment, respondent and her children joined the husband and his children at the marital home and spent the night. Members of the client's family learned about respondent's stay and contacted the senior attorney about it on March 11, 2008.

¶ 6. The senior attorney confronted respondent about her overnight stay with the husband, and respondent admitted to it and admitted that her relationship with the husband had resumed. The senior attorney immediately terminated respondent's employment with the firm. Respondent and her children continued to live with the husband for several months after the termination of her employment.

¶ 7. In its decision and order addressing respondent's conduct, the Panel found that respondent's relationship with the husband had been romantic in character at all times. The Panel also concluded that actual harm — stress on the client and her

children — had resulted from the relationship and that the relationship had created the potential for more serious harm. Furthermore, the Panel was concerned that respondent did not acknowledge the "wrongful nature" of her conduct and felt that she was either evasive or nonresponsive to questions about the details of her relationship with the husband. Ultimately, the Panel concluded that during her relationship with the husband, respondent had engaged in deceit in violation of Rule 8.4(c) and suspended her from the practice of law for a period of six months.

¶ 8. This Court reviews a disciplinary hearing panel's findings of fact under a clearly erroneous standard. A.O. 9, Rule 11(E); *In re Farrar*, 2008 VT 31, ¶ 5, 183 Vt. 592, 949 A.2d 438 (mem.). A panel's findings are upheld if "clearly and reasonably supported by the evidence," whether the findings are purely factual or mixed law and fact. *In re Blais*, 174 Vt. 628, 629, 817 A.2d 1266, 1269 (2002) (mem.) (quotations omitted). We give deference to the recommendations of a disciplinary panel but use our own discretion and make our own determination as to which sanctions are appropriate for violations of the Rules of Professional Conduct. *Id.* at 630, 817 A.2d at 1269; *Farrar*, 2008 VT 31, ¶ 5.

¶ 9. On appeal, disciplinary counsel argues that respondent violated Rule 8.4(c) because her conduct involved deceit and that, based on the American Bar Association standards and aggravating factors, this Court should disbar respondent. Respondent, in turn, claims that her conduct did not constitute deceit and that, at most, she should have been reprimanded, not subjected to suspension or disbarment. We agree with the Panel's decision that respondent's conduct involved deceit and constitutes a violation of Rule 8.4(c); however, we hold that a public reprimand, not disbarment or suspension, is the appropriate sanction.

¶ 10. It is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." V.R.Pr.C. 8.4(c). The rule is meant to reach only conduct "that reflects on an attorney's fitness to practice law." *In re PRB Docket No. 2007-046*, 2009 VT 115, ¶ 12, 187 Vt. 35, 989 A.2d 523.

¶ 11. We begin with an evaluation of the ethical difficulty caused by respondent's conduct. Rule 1.7 of the Rules of Professional Conduct prohibits a lawyer from representing a client without the client's written consent if the representation involves a "concurrent conflict of interest." V.R.Pr.C. 1.7(a). Such a conflict exists if

"there is a significant risk that the representation of one or more clients will be materially limited . . . by a personal interest of the lawyer." *Id.* 1.7(a)(2). In general, if one lawyer in a firm would be prohibited by Rule 1.7 from representing a client, all are prohibited. See *id.* 1.10(a). This rule is subject to an exception, however, when the prohibition "is based on a personal interest of the prohibited lawyer" if that interest "does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm." *Id.* The Comment explains the exception as follows:

> The rule in paragraph (a) does not prohibit representation where neither questions of client loyalty nor protection of confidential information are presented. Where one lawyer in a firm could not effectively represent a given client because of strong political beliefs, for example, but that lawyer will do no work on the case and the personal beliefs of the lawyer will not materially limit the representation by others in the firm, the firm should not be disqualified. On the other hand, if an opposing party in a case were owned by a lawyer in the law firm, and others in the firm would be materially limited in pursuing the matter because of loyalty to that lawyer, the personal disqualification of the lawyer would be imputed to all others in the firm.

*Id.*, cmt. [3].

■ ¶ 12. Under Rule 1.7(a)(2), there is a conflict of interest if the firm's senior attorney represented the client in her divorce and, at the same time, another attorney in the firm has a romantic relationship with the client's husband. Such a situation raises serious concerns about loyalty to the client and misuse of confidential information. See *id.*, cmts. [6], [10]. This conflict is closer to the hypothetical from Comment [3] where disqualification is imputed to all firm members, than to the hypothetical where it is not. The situation created a significant material risk that the client's representation would be limited. Continuing representation of the client would have risked violating Rule 1.7(a)(2) had the client's representation continued once respondent recommenced the relationship with the husband.

■ ¶ 13. We recognize that the conflict of interest was not present at the onset of the representation of the client. In these

circumstances, the lawyer is required to withdraw from representing the client if "the representation will result in violation of the rules of professional conduct." *Id.* 1.16(a)(1); see also *id.* 1.7, cmt. [3]. We also recognize that in some instances a lawyer may seek consent for continuation of representation despite a conflict of interest. See *id.* 1.7(b). We doubt that such consent would apply where the client wife was in direct litigation with the husband, but, in any event, the senior attorney chose not to seek consent.

¶ 14. This brings us to whether respondent engaged in "dishonesty, fraud, deceit or misrepresentation" by failing to inform the senior attorney that her relationship with the husband had resumed. *Id.* 8.4(c). We conclude that respondent's failure to inform the senior attorney about her renewed relationship with the husband can be characterized as deceitful; she was aware that her relationship with the husband put the firm into a conflict of interest with its representation of its client. Respondent had a duty to disclose the continuing relationship so that the firm could take the action necessary to cure the potential ethical violation. See *Velardo v. Ovitt*, 2007 VT 69, ¶ 29, 182 Vt. 180, 933 A.2d 227 (holding that father was entitled to new custody trial because assistant judge in case was sister of guardian ad litem, and relationship was not revealed until after trial; this Court emphasized "that the appearance of impropriety here is substantial and the conduct that created it is inexcusable. . . . [T]he assistant judge had actual knowledge of the source of the conflict . . . [and thus] had an independent duty to disclose the relationship that created the conflict of interest and failed to do so.").

¶ 15. Respondent urges us to view her conduct in relation to the common law of fraud and deceit, arguing that her conduct did not meet that standard. We conclude otherwise. When there exists a duty to speak, "Vermont has long recognized the doctrine of negative deceit." *Sutfin v. Southworth*, 149 Vt. 67, 70, 539 A.2d 986, 988 (1987); see also *Crompton v. Beedle*, 83 Vt. 287, 295, 75 A. 331, 333 (1910) (same). Thus, liability for fraud may be premised "on the failure to disclose material facts as well as on affirmative misrepresentations." *Sugarline Assocs. v. Alpen Assocs.*, 155 Vt. 437, 444, 586 A.2d 1115, 1119 (1990); see also *White v. Pepin*, 151 Vt. 413, 416, 561 A.2d 94, 96 (1989) ("Where [an affirmative] duty is present, the failure to disclose a material fact coupled with an intention to mislead or defraud rises to the

level of material misrepresentation."); *Standard Packaging Corp. v. Julian Goodrich Architects, Inc.,* 136 Vt. 376, 381, 392 A.2d 402, 405 (1978) (stating fraud "must consist of some affirmative act, or of concealment of facts by one with knowledge and a duty to disclose"). A duty can arise from the relations of the parties, or superior knowledge, or means of knowledge. See *Silva v. Stevens,* 156 Vt. 94, 103, 589 A.2d 852, 857 (1991). Here, there are multiple sources of a duty to disclose. As in *Velardo,* respondent created a conflict of interest for the firm by her conduct, and had a duty to disclose it. The senior attorney made clear that the firm would not tolerate the situation and would terminate respondent as the remedy.

¶ 16. Respondent argues that there was no scienter — that is, an intent to mislead — because she was not required to cease all contact with the husband. See *White,* 151 Vt. at 416, 561 A.2d at 96. This argument ignores the fact that she did not disclose the renewal of her romantic relationship with the husband. The evidence strongly supports the conclusion that she intended to mislead the senior attorney through nondisclosure. We have a similar reaction to respondent's arguments that there was no justifiable reliance upon her nondisclosure and there was no damage caused by it. The senior attorney relied upon respondent's promise to terminate the relationship with the husband by continuing to represent the client — oblivious to the conflict of interest — and by continuing to employ respondent. As the Panel found, respondent's actions damaged the client. They damaged the firm by exposing it to an ethical violation. They damaged the senior attorney's relationship with the client. Thus, even if we view this case through a prism of common law deceit, we find the elements of a violation of Rule 8.4(c).

¶ 17. Respondent argues that even if her behavior is found to have been dishonest, it does not rise to the level of reflecting on her fitness to practice law. See *PRB Docket No. 2007-046,* 2009 VT 115, ¶ 12. We disagree. This Court provided extensive analysis of Rule 8.4(c) in *PRB Docket No. 2007-046.* In that case, we declined to hold that the respondents' action, misleading a potential witness about whether they were recording a telephone conversation, rose to the level of violating Rule 8.4(c). *Id.* ¶ 1. However, our decision in *PRB Docket No. 2007-046* was significantly influenced by factors not present in the current case. In that case, we specifically noted that the respondents "earnestly believed that their

actions were necessary and proper" and that they were motivated by a desire to defend their client. *Id.* ¶ 17. Given these motives, we concluded that respondents' actions did not reflect adversely on their fitness to practice law. *Id.*

■ ¶ 18. In the current case, respondent put the firm in danger of an ethics violation. She knew the firm sought to prevent a problem by requiring her to end the relationship with the husband. She acted deceitfully when she concealed her renewed relationship. Respondent's actions were motivated by a self-serving desire to keep both her employment and her relationship. We hold that respondent's choices and actions reflect adversely on her fitness to practice law, and we affirm the Panel's decision that respondent violated Rule 8.4(c).

■ ¶ 19. We look to the ABA's Standards for Imposing Lawyer Sanctions to "guide our determination of the appropriate sanction in an attorney disciplinary matter." *In re Neisner*, 2010 VT 102, ¶ 14, 189 Vt. 145, 16 A.3d 587; see also ABA Center for Professional Responsibility, *Standards for Imposing Lawyer Sanctions* (1986) (amended 1992) [hereinafter ABA Standards]. We weigh four factors when deciding upon the appropriate sanction: "(1) the duty violated, (2) the attorney's mental state, (3) the actual or potential injury caused by the misconduct, and (4) the existence of aggravating or mitigating factors." *Neisner*, 2010 VT 102, ¶ 14; see also ABA Standards 3.0, at 26 (listing same). Depending on the importance of the duty violated, the level of the attorney's culpability, and the extent of the harm caused, the standards provide a presumptive sanction. *In re Fink*, 2011 VT 42, ¶ 35, 189 Vt. 470, 22 A.3d 461. The presumptive sanction can then be tailored to the case, based on the existence of aggravating or mitigating factors.

¶ 20. Based on the ABA Standards, disciplinary counsel argues that disbarment is the "presumptive sanction." Respondent, on the other hand, concludes that, according to the ABA Standards, the punishment for this first-time offense should be a reprimand. Both interpretations are plausible because the language used in the ABA Standards is relatively broad and subjective, and, when applied to this case, different ABA Standards appear to advocate the use of different sanctions.

¶ 21. Disciplinary counsel urges us to look at three ABA Standards which, counsel argues, each support a sanction of

disbarment: Standards 7.1, 4.6 and 5.11. The Panel concluded that Standards 7.1 and 4.6 apply and support suspension. Respondent argues that neither Standard 7.1 nor 4.6 apply and that Standard 5.11 does not support disbarment or suspension.

¶ 22. We start with Standard 7.1, which appears to be the primary standard relied upon by the Panel. It pertains to "Violations of Other Duties Owed as a Professional," and it provides for disbarment if such conduct is intended "to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system." We agree with respondent that this standard does not apply to this case. As stated in the introduction to the standard, it is meant to apply to "cases involving false or misleading communication about the lawyer or the lawyer's services, improper communication of fields of practice, improper solicitation of professional employment from a prospective client, unreasonable or improper fees, unauthorized practice of law, improper withdrawal from representation, or failure to report professional misconduct." ABA Standards 7.0, at 46. None of these behaviors matches respondent's conduct here.

¶ 23. We have a similar view of Standard 4.6. It sanctions disbarment when the lawyer "knowingly deceives a client with intent to benefit the lawyer" and "causes serious injury or potential serious injury to a client." ABA Standards 4.61, at 36. The standard states that it is invoked when the lawyer "engages in fraud, deceit, or misrepresentation directed toward a client." *Id.* 4.6, at 36. We recognize that respondent's conduct caused harm to the client, but the fraud, as we defined it above, was aimed primarily at the senior attorney and the firm, and not directly at the client. If respondent had used confidential information from the client or the senior attorney to benefit the husband, the situation would be different and Standard 4.61 could apply. There was, however, no evidence of such conduct.

¶ 24. This leaves us with Standard 5.1, which does clearly apply because it covers other instances of conduct "involving dishonesty, fraud, deceit, or misrepresentation." Disciplinary counsel and respondent point to different subsections of ABA Standard 5.1. Standard 5.11(b), advocated for by disciplinary counsel, states that disbarment is generally appropriate if a lawyer engages in intentional conduct involving "dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." Standard 5.13, advocated for by respondent, states that

reprimand is generally appropriate "when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice." The difference between these two ABA Standards is the seriousness of the reflection on the lawyer's fitness to practice. This standard, however, contains no option between reprimand and disbarment, such as suspension. The sanction to be applied, therefore, be it disbarment, reprimand, or something in between, requires an exercise of judgment.

¶ 25. In deciding between 5.11(b) and 5.13, we agree with respondent that 5.13 is the more fitting. While we conclude her actions reflected adversely on her fitness to practice law, we do not agree that the reflection was so serious as to merit disbarment. This opinion is supported by a review of the Commentary to ABA Standard 5.11, which discusses a number of cases where disbarment was proper, all of which involved significantly more serious conduct. See ABA Standards 5.11, at 38, Commentary (citing cases where lawyers were convicted of serious felonies and disbarment was imposed, including *In re Grimes*, 326 N.W.2d 380 (Mich. 1982) (disbarring lawyer convicted of two counts of federal income tax evasion and one count of subornation of perjury) and *Sixth Dist. Comm. of Va. State Bar v. Hodgson*, No. 80-18 (Va. Disciplinary Bd., 1981) (disbarring lawyer who advised client that he could make arrangements to have her husband killed in lieu of bringing child custody suit)).

¶ 26. Like the Panel, we find that the ABA Standards offer guidance but are not dispositive in this case. We note that the sanctions are intended to leave "room for flexibility and creativity in assigning sanctions in particular cases." ABA Standards, Preface at 2. Also, as the Panel did, we turn to precedent from this Court to augment our analysis under the standards. While our precedents do not preclude disbarment as a sanction in a case like this, neither do they compel it as a remedy. Rather, on careful review, our precedents suggest that a public reprimand is most appropriate.

¶ 27. We have generally deemed disbarment to be warranted only in cases of very serious misconduct, such as significant criminal activity, misuse of client information or funds, or deceit in the handling of client information. See, e.g., *In re Hunter*, 171 Vt. 635, 639, 769 A.2d 1286, 1291 (2000) (mem.) ("We conclude that

disbarment is the appropriate sanction to protect the public. Respondent engaged in serious criminal conduct, misused clients funds for his own benefit, and lied to clients, attorneys and the court to cover up his misconduct."); *In re Burgess*, 169 Vt. 533, 533, 725 A.2d 302, 302 (1999) (mem.) (disbarring already-suspended attorney where suspension stemmed from federal convictions in California· on charges of contempt, interstate transportation of stolen property, and fraud, and after incarceration, he violated probation and was again incarcerated; in spite of probation condition prohibiting him from practicing law, he accepted job with a law firm and ultimately defrauded the firm, resulting in additional incarceration); *In re Abell*, 166 Vt. 620, 697 A.2d 340 (1997) (mem.) (disbarring attorney who embezzled $408,260 from his law firm); *In re Mitiguy*, 161 Vt. 626, 641 A.2d 362 (1994) (mem.) (disbarring attorney who was convicted of four counts of embezzlement for embezzling client funds and two counts of false swearing); *In re Joy*, 158 Vt. 646, 650, 605 A.2d 850, 853 (1992) (mem.) (disbarring attorney where she "abandoned [client] and then lied to her about the status of her case," despite attorney's knowledge of obligations to client; attorney's abandonment of client's case resulted in preclusion of client pursuing legal remedies in court). In contrast to the cases where we have ordered disbarment, the conduct at issue here involved no criminal activity — either charged or uncharged. Furthermore, the conduct at issue was not related directly to the handling of client matters or funds. While respondent's behavior did involve harm to a client, the harm did not result from direct misconduct with relation to a client's case; it resulted from respondent deceiving her employer, and thereby indirectly deceiving the client. We believe that these distinctions make disbarment an inappropriate response.

¶ 28. The suspension ordered by the Panel also fails to follow our earlier cases. ABA Standard 7.2 suggests that a lawyer be suspended when the lawyer "knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to . . . the public, or the legal system." If, however, the conduct is an isolated instance of negligence that causes little or no actual or potential injury, the ABA Standards recommend an admonition. *In re Warren*, 167 Vt. 259, 261-62, 704 A.2d 789, 791 (1997).

¶ 29. This Court generally has ordered suspension only in cases involving behavior more egregious than the conduct in this case.

In *In re Hongisto*, the respondent received two six-month suspensions, to run concurrently, for failing to cooperate with investigations of a client-trust-account overdraft and several client ethics complaints, failing to represent her client with reasonable diligence, failing to communicate with a client, and violating attorney licensing rules. 2010 VT 51, ¶¶ 11-12, 188 Vt. 553, 998 A.2d 1065 (mem.). In *Hongisto*, the hearing panel found a pattern of misconduct and a significant disciplinary record as aggravating factors. In *Blais*, the respondent was suspended for five months for misconduct consisting of five separate instances of neglect of client matters and three instances of misrepresentation. 174 Vt. at 630, 817 A.2d at 1269. We also recognized as aggravating factors that the respondent had a dishonest or selfish motive in committing this misconduct in that the neglect resulted from his concern with bringing in money for himself and his firm, and it demonstrated a pattern of misconduct. *Id.* He also had two prior disciplinary offenses and was found to have substantial experience in the practice of law (twenty-five years). *Id.*

¶ 30. In *In re Wenk*, the respondent had received a private reprimand for his first violation for neglect and misrepresentation, a public reprimand for his second violation for the same behaviors and, finally, a six-month suspension for his third disciplinary proceeding, again on the same basis: neglect and misrepresentation. *In re Wenk*, PCB File No. 96.50, Decision No. 14 (Oct. 16, 2000), available at http://libraries.vermont.gov/law/prb/prbdecisions; see also *In re Wenk*, 165 Vt. 562, 678 A.2d 898 (1996) (mem.) (public reprimand for second professional conduct violation). He did not appeal from the third disciplinary proceeding resulting in his suspension. In the third proceeding, the hearing panel noted the respondent's substantial experience in the practice of law (twenty-two years). *Wenk*, PCB File No. 96.50, Decision No. 14. Most recently, in *Neisner*, this Court upheld the hearing panel's finding that the respondent violated Rule 8.4(b) based on his conviction for impeding a public officer, a felony. 2010 VT 102, ¶ 13. The Court ultimately determined that a two year suspension, commencing on the date of the respondent's interim suspension and concluding a few weeks after this Court's opinion issued, was appropriate. *Id.* ¶ 26. As an aggravating factor we considered that respondent had been in practice for nearly twenty years. *Id.* ¶ 19.

¶ 31. In each of the above examples, this Court found suspension to be an appropriate sanction when the respondent had been

found to violate the rules through neglect of a client and serious misrepresentation directly to the client of matters being handled by the attorney. In *Neisner* we found the respondent's behavior involved "the 'serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud.'" *Id.* ¶ 26 (quoting ABA Standards 5.11(a), at 38).

¶ 32. The critical question, therefore, is whether respondent's misconduct was of a similar character. This determination is informed by reviewing the aggravating and mitigating factors and the Panel's application of ABA Standards 9.2 and 9.3. The Panel found that respondent's behavior included several aggravating factors listed in ABA Standard 9.22: (1) respondent appeared to have little remorse for her behavior; (2) the motive behind respondent's behavior was selfish; (3) the client harmed in this case was a vulnerable victim; and (4) respondent's answers to questions were vague and nonresponsive. The Panel found respondent's lack of a prior disciplinary record was a mitigating factor.

¶ 33. The record evidence provides limited support for the Panel's finding that respondent "appeared to have little remorse for the situation." On the one hand, respondent initially responded to the disciplinary investigation by flatly denying any ethical misconduct, accusing her firm's senior partner of engaging in "payback" and "inappropriate conduct," and castigating the client's "presumption." On the other hand, respondent later testified, "these aren't things that I'm very proud of, and certainly not things that I, you know — I tried to take this situation and learn from it what I could and really not dwell on any of it, so I'm terribly regretful." This is an expression of remorse.

¶ 34. The Panel found that respondent's behavior was selfish, and it was. But it was mitigated, to be sure, by the fact that she acted not for greed or glory, nor for malice or lucre, but apparently for romantic reasons. The harm to the firm and the client, however, remained the same.

¶ 35. Ultimately, we conclude that respondent's relatively brief professional experience and her lack of other disciplinary actions militate in favor of the more lenient sanction of a public reprimand. The ABA Standards suggest that public reprimand "is generally appropriate when a lawyer knowingly engages in any

other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law." ABA Standards, in ABA Compendium of Professional Responsibility Rules and Standards 429 (2008 ed.). Recently, in *Fink*, the respondent was found to have violated duties he owed as a professional to put a contingent fee agreement in writing and to charge a reasonable fee for his services. 2011 VT 42, ¶¶ 19-23. This Court found that there was injury to the public at large and to the legal profession because lack of written contingent agreements and excessive fees increased public distrust of lawyers and decreased public confidence in the profession. *Id.* ¶ 36. Having found actual injury to the public and potential injury to the client, this Court sanctioned respondent with a public reprimand. In *Warren* the respondent was publicly reprimanded for repeatedly contacting the wife of a man with whom the respondent's estranged wife was living, informing her of the situation, and offering to help her get a divorce from her husband "at no cost to you but at great expense to him." 167 Vt. at 260, 704 A.2d at 790 (quotation marks omitted). The matter at hand is similar to *Warren*. Warren had a selfish motive for revenge; respondent had a selfish motive for romance. Neither disciplinary counsel, nor the Panel, has provided a compelling reason for treating respondent differently than Warren.

¶ 36. There is no question that respondent was deceitful. While her deceit concerned how she was conducting her personal life, this was not a purely personal failure, but a professional one. See *PRB Docket No. 2007-046*, 2009 VT 115, ¶ 15 (reading Rule 8.4 as "applying only to misrepresentations that reflect adversely on a lawyer's fitness to practice law" and citing other jurisdictions). Her deceit harmed her firm and the client. However, respondent was immediately fired when the senior attorney learned she had continued her relationship with the client's husband. Representation of the client went on unaffected. Respondent briefly exposed the firm to a potential ethical violation, but, again, that potential was soon extinguished. There was no actual injury to the public. She is a relatively new attorney, in practice for less than seven years, with no prior disciplinary record.

*The decision of the Professional Responsibility Board's Hearing Panel that respondent violated Rule 8.4(c) is affirmed. Respondent is hereby publicly reprimanded for her conduct.*

¶ 37. **Dooley, J.,** dissenting. I concur with the majority's conclusion that respondent engaged in deceit and violated Rule 8.4(c) of the Rules of Professional Conduct. However, given the level of deceit involved, I cannot agree that a public reprimand is the appropriate sanction. I believe the suspension imposed by the Panel is more fitting. Accordingly, I respectfully dissent.

¶ 38. The majority correctly identifies the ethical problem caused by respondent's conduct but inaccurately downplays the harm caused by her actions. By carrying on a romantic relationship with the client's husband, respondent clearly created a conflict of interest that was imputed to her entire firm, causing it and its members to violate Rule 1.7(a)(2) of the Rules of Professional Conduct. She did this knowingly and intentionally — she did it surreptitiously after promising to terminate the relationship.

¶ 39. The majority seeks to justify its decision to impose a public reprimand instead of a suspension by minimizing the seriousness of respondent's conduct, concluding that respondent only "briefly exposed the firm to a potential ethical violation, but . . . that potential was soon extinguished." *Ante,* ¶ 36. While it is true the firm's exposure to potential ethical violations was short, that is because the senior attorney learned of respondent's actions independently and terminated her. Had the client's family not informed the senior attorney about respondent's overnight visit, there is no indication respondent would have taken any action on her own to end the firm's exposure to the ethical violation.

¶ 40. The misconduct in this case involved deceit, and the impropriety of the behavior was obvious. After definitively being told that she could not maintain both her position at the firm and her relationship with the opponent of the firm's divorce client, respondent chose to continue or restart relations with the opponent-husband, while failing to disclose the ongoing relationship and the conflict of interest it created. The senior attorney relied upon respondent's promise to terminate the relationship with the husband and continued to employ respondent and to represent the client, unaware of the renewed conflict of interest. Respondent understood the conflict of interest that was created by her conduct as shown by her misguided request for a "conflict wall." As the Panel found, and the majority recognized, respondent's actions damaged not only the client, but also damaged the firm and the

senior attorney's relationship with the client. Respondent's behavior illustrates a serious lack of judgment and lack of moral character that reflects adversely on her fitness to practice law.

¶ 41. As the majority recognizes, we give deference to the Panel's decision. In giving deference, I concur with the Panel's decision that a reprimand is too lenient a sanction, given the level of deceit and the severity of the potential ethics violation here. Although I agree with the majority that the ABA Standards are broad and subjective and do not lead conclusively to any one sanction in this case, I believe they support a suspension. See ABA Center for Professional Responsibility, *Standards for Imposing Lawyer Sanctions* (1986) (amended 1992). ABA Standard 5.1 is the most applicable standard as it deals with conduct "involving dishonesty, fraud, deceit, or misrepresentation." As the majority notes, the parties point to different subsections of Standard 5.1. Disciplinary counsel advocates for ABA Standard 5.11(b), which states disbarment is generally appropriate for "intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." ABA Standard 5.13, for which respondent advocates, states that a reprimand is "generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law." The majority correctly acknowledges that whether or not the seriousness of an attorney's actions rises to the level covered by Standard 5.11(b) is an extremely subjective determination. Because this ABA Standard does not provide for suspension, the severity of the sanction varies tremendously based on the difference in the degree of conduct.

¶ 42. I agree with respondent and the majority that Standard 5.13 is more appropriate than 5.11(b); however, as the majority notes, the standards are intended to leave "room for flexibility and creativity" in imposing sanctions. ABA Standards, Preface at 2. Taking into account the aggravating factors present in this case, I believe a suspension is more appropriate than a reprimand under the ABA Standards. Respondent's deceit was intentional, and it compromised the position of her firm and the senior attorney. Adding to the seriousness of this underlying offense are the following aggravating factors: (1) respondent appeared to have little remorse; (2) the motive behind respondent's behavior was selfish; (3) the client harmed in this case was a vulnerable victim;

and (4) respondent's answers to questions were vague and non-responsive.[*] Given the severity of the underlying offense and the added aggravating factors, a suspension is appropriate.

¶ 43. The imposition of a suspension is also most consistent with prior precedent from this Court, which suggests a public reprimand would be too lenient. In general, meaningful comparisons of attorney sanction cases are difficult as the behavior that leads to sanctions varies so widely between cases. That said, because respondent's conduct involved obvious deceit and she knowingly put all members of her firm in violation of ethical standards, the conduct at issue here is more serious than behavior for which we have issued reprimands.

¶ 44. The majority tries to liken respondent's actions to the behavior that resulted in a public reprimand in *In re Warren*, 167 Vt. 259, 704 A.2d 789 (1997) (per curiam). In that case, the respondent sent three letters to the wife of the man with whom his estranged wife was living. These letters asked the wife repeatedly to contact the respondent and offered the wife help in getting a divorce from her husband "at no cost to you but at great expense to him." *Id.* at 260, 704 A.2d at 790. We found the respondent violated the Code of Professional Responsibility in *Warren* because the content of his letters made sense only as an offer to use his knowledge of the law and legal experience in an unethical manner, *id.* at 262, 704 A.2d at 791; however, we also noted there was little actual injury as a result of the respondent's conduct. *Id.* at 262, 704 A.2d at 792. The majority suggests that this case is controlled by *Warren* because the respondent in *Warren* "had a selfish motive for revenge," and "respondent had a selfish motive for romance." *Ante,* ¶ 35. While the subject matter and motives involved in the two cases might be similar, the actions taken by respondent here were significantly more egregious. In *Warren,* the respondent violated the Code of Professional Responsibility, and he alone risked suffering any consequences. He allowed his emotions to drag him into a violation of the Code, as opposed to respondent in this case, who allowed her emotions to

---

[*] I accept the Panel's analysis of the aggravating and mitigating factors as supported by the evidence. The majority ignores the standard of review and does not provide sufficient support to suggest that these findings were clearly erroneous. See A.O. 9, Rule 11(E); *In re Farrar*, 2008 VT 31, ¶ 5, 183 Vt. 592, 949 A.2d 438 (mem.). The Panel was in a much better position than this Court to determine whether respondent showed remorse or whether her answers were evasive.

drag her entire firm into a serious ethical violation. Furthermore, while evidence from his letters suggested the respondent in *Warren* knew his conduct was improper, he did not act with the same level of deceit as respondent here. Here, respondent was told, point blank, that she must end her relationship, and she assured the senior attorney that she had done so. Realizing that the senior attorney had relied on her representation that the relationship had ended, respondent then recommenced relations with the husband without making any effort to inform the senior attorney or her firm.

¶ 45. Other cases from this Court have also imposed reprimands for less serious behavior than the conduct at issue here. See, e.g., *In re Sinnott*, 2004 VT 16, ¶ 10, 176 Vt. 596, 845 A.2d 373 (mem.) (assigning sanction of public reprimand and restitution when "the panel concluded that respondent had violated Vermont Rules of Professional Conduct 1.5 by charging an unreasonable fee which it labeled as a 'nonrefundable retainer'"); *Farrar*, 2008 VT 31, ¶¶ 3, 12 (concluding public reprimand appropriate where attorney's bookkeeper transferred money each month from firm's business account to client trust account and then back to business account to ensure there would be sufficient funds in business account each month to meet payroll — bookkeeper reconciled trust account monthly and respondent had no selfish or dishonest motive for commingling money with clients' property).

¶ 46. I agree that there are some cases in which this Court has ordered suspension for more egregious behavior than the actions in this case. See, e.g., *In re Hongisto*, 2010 VT 51, ¶¶ 11-12, 188 Vt. 553, 998 A.2d 1065 (mem.); *In re Neisner*, 2010 VT 102, ¶ 13, 189 Vt. 145, 16 A.3d 587. However, respondent's behavior is on a par with other behavior that has resulted in the imposition of a suspension. For example, in *In re Taylor*, this Court considered a recommendation from the Professional Conduct Board that the respondent be suspended from the practice of law for six months based on his conduct before the family court, which included his failure to pay spousal maintenance and child support and his failure to comply with related family court orders. 171 Vt. 640, 640-41, 768 A.2d 1273, 1274 (2000) (mem.). We imposed a six-month suspension in *Taylor* based on a determination that the respondent's behavior demonstrated conduct prejudicial to the administration of justice, conduct adversely reflecting on fitness to practice law, and a disregard of court orders. *Id.* I believe the

conduct at issue here is comparable to that in *Taylor*. While respondent here did not openly violate court orders, she acted deceitfully and violated the agreement she made with her senior attorney. I again emphasize that an important factor in this case is that respondent knowingly put her entire firm into an ethical violation. Other cases from this Court have also imposed suspensions for behavior that calls into question an attorney's fitness to practice to the same degree as respondent's conduct here. See, e.g., *In re Free*, 159 Vt. 625, 625-26, 616 A.2d 1140, 1140-41 (1992) (mem.) (suspending respondent for six months for three counts of knowingly failing to file Vermont income tax returns where respondent provided full and free disclosure to bar counsel and exhibited cooperative attitude in proceedings, where penalties for criminal conduct were also imposed, but where respondent had a disciplinary record, multiple offenses, and substantial experience in practice of law).

¶ 47. The Panel imposed a suspension in this case, and we must give deference to that decision. The seriousness of respondent's actions, combined with aggravating factors, make a period of suspension the most appropriate sanction. Accordingly, I respectfully dissent.

¶ 48. I am authorized to state that Chief Justice Reiber joins this dissent.