## In re Craig R. WENK

[678 A.2d 898]

No. 95-486

April 30, 1996. The Board found that respondent's negligence caused no actual damage and that he paid for his misconduct through the settlement of the malpractice suit. Respondent is remorseful and has cooperated with these disciplinary proceedings. In light of these mitigating factors, the Board's recommended sanction of a public reprimand is approved.

**Allen, C.J.,** and **Gibson, J.,** dissenting. The Professional Conduct Board found that respondent violated DR 1-102(A)(4) by not candidly answering a question regarding his client's status in litigation in which the respondent was representing the client, and that he knowingly engaged in misrepresentation by omission by not informing his client that he had lost his interest in property in Vermont by default. It also found that he violated DR 6-101(A)(3) by failing to file an answer to a petition to partition and by failing to communicate with his client. It concluded that while his initial misconduct was due to negligence he later knowingly deceived his client for more than a year and knowingly failed to represent him diligently.

A majority of the Board indicated that had there been evidence of actual injury in the case, it would have recommended suspension. The ABA Standards for Imposing Lawyer Sanctions (1991) state that suspension is generally appropriate when a lawyer knowingly fails to perform services and causes injury *or potential injury* to a client, 4.42(a) (emphasis added), and when a lawyer knowingly deceives a client and causes injury *or potential injury* to the client. 4.62 (emphasis added). The misconduct found certainly had the potential for injury to the client and warranted suspension under the ABA Standards.

It is apparent from the Board's opinion that it believed that if it recommended suspension that the suspension had to be at least six months because of our opinion in *In re Rosenfeld,* 157 Vt. 537, 601 A.2d 972 (1991). The Board felt that a suspension of that duration would be too severe in this case. We did indicate in *Rosenfeld* that the ABA Standards recommended that if a lawyer is to be suspended, the suspension should have a duration of at least six months, and imposed a six-month suspension in that case. *Id.* at 547, 601 A.2d at 978. We noted that the rationale in the commentary to ABA Standard 2.3 is that a short-term suspension with automatic reinstatement is not an effective means of protecting the public and that a six-month suspension is needed to protect client interests. *Id.* That rationale does not appear to be applicable in this case as the Board found that the respondent was experiencing personal problems and physical impairment during part of his representation, cooperated with the disciplinary proceedings, is remorseful, and has settled the malpractice action arising from his misdeeds.

In our view, *Rosenfeld* does not foreclose suspensions for less than six months. Indeed, we imposed a two-month suspension following the decision in *Rosenfeld. In re Doherty,* 162 Vt. 631, 650 A.2d 522 (1994). The ABA recommendation that suspensions should be for a period of time equal to or greater than six months is prefaced by the word "generally" and is not intended to apply in every

instance. Further, our rules governing the operation of the Professional Conduct Board clearly contemplate suspensions of less than six months. A.O. 9, Rule 20B (lawyer suspended for less than six months may resume practice at end of period of suspension). We agree with the dissenters on the Board that respondent's conduct warrants more than a public reprimand.

## FINAL REPORT TO THE SUPREME COURT

This matter was presented to us by stipulated facts following a waiver by respondent of his right to proceed by a petition of misconduct. We have accepted the stipulated facts and adopted them as our own, incorporating them herein by reference. They are briefly summarized below.

### Facts

Mr. Wenk has been a member of the Vermont Bar since 1974 and practices in Wilmington, Vermont.

In October of 1990, respondent agreed to represent Robert S. Dyer, Jr. in connection with a partition action. This client had invested in two real estate ventures with his parents who had mortgaged their Connecticut home to finance the projects. One project was in Manchester, Vermont; the other was in Myrtle Beach, South Carolina. A few years after these ventures were begun, a disagreement arose within the family. The parties could not agree as to how income from these two ventures was to be shared. The parents separated, and the mother brought a partition action in Vermont against her son and her husband.

About a month after respondent undertook this representation, he suffered unexpected, acute and serious medical problems which totally debilitated him for an extended period. He did not resume the full practice of law until March of 1991.

Because of this illness, he neglected Mr. Dyer, Jr.'s case for several months.

The partition complaint was filed in January of 1991 against both father and son. While the father filed an answer through his own counsel, respondent did not file an answer on behalf of the son.

Subsequently, the mother filed for a default judgment against respondent's client and for summary judgment against her husband. On May 29, 1991, the court granted the judgment of partition and appointed commissioners to sell the property.

Respondent did not inform his client of this order. He had lost track of it due to his illness, and he was distracted by other personal problems. He did not turn his attention to this case again until some ten months later when he received a letter from Salvatore Agati, a Connecticut lawyer who also represented Robert S. Dyer, Jr.

Mr. Agati was defending their mutual client in a Connecticut suit by the father against the son for failure to contribute to the mortgage note held on the South Carolina property. Mr. Agati had filed a counterclaim against the father, averring that whatever was owed on that mortgage note was set-off by the amount the father owed the son on the Vermont property. Mr. Agati wrote to respondent in March of 1992 to inquire as to the status of the Vermont partition proceedings so that he could adequately defend Mr. Dyer, Jr. in the Connecticut proceedings.

At this point, respondent became aware of his earlier neglect of his client's case. However, rather than informing either his client or Mr. Agati of the default, he chose to remain silent. Respondent merely informed Mr. Agati that the property was awaiting sale by the court appointed commissioners and that when the property was eventually sold, the proceeds would be held in escrow pending further hearing as to distribution. Respondent did not communicate at all with his client.

In June, Mr. Agati and respondent correponded further about a proposed settlement of the Vermont dispute. Nothing came of that correspondence. Eventually, Mr. Dyer, Jr. sold the South Carolina property, keeping the entire proceeds of $30,000, but paying his father $16,000 to settle the Connecticut lawsuit. This left only the Vermont partition action pending.

In January 1993, the commissioners sold the Vermont property for $15,000 less than the Dyer family had paid for it in 1987. Mr. Dyer, Jr. had no knowledge of this sale. The court then considered how to distribute the proceeds. The parents agreed between themselves as to how the proceeds would be split between them. Respondent did not file anything on behalf of his client. A default order was entered against Mr. Dyer, Jr. who received nothing from the proceeds.

Mr. Dyer, Jr. eventually learned from a third party that the property had been sold and the proceeds distributed. He brought a legal malpractice action against respondent which was settled to Mr. Dyer, Jr.'s satisfaction.

## Conclusions

By not candidly answering Mr. Agati's question about their mutual client's true status in the partition litigation, respondent violated DR 1-102(A)(4)(a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). Additionally, respondent knowingly engaged in misrepresentation by omission by not informing his client that he had lost his interest in the Vermont property by default.

Respondent also violated DR 6-101(A)(3)(a lawyer shall not neglect a legal matter entrusted to him) by failing to file an answer to the petition, failing to ensure that his client's interests were protected while respondent was physically unable to do so, and failing to communicate with his client. The Board is particularly trouble by respondent's conduct after March of 1992 when respondent realized he had neglected the case, yet took no steps to protect his client's interests.

In determining the appropriate sanction, we consider first the duty violated, the lawyer's mental state, the actual or potential injury caused, and any aggravating or mitigating factors. Standard 3.0, ABA Standards for Imposing Lawyer Sanctions (1991).

*Duty violated:* In the first instance, respondent failed to fulfill his duties of candor and diligence which he owed to his client. In regard to his dealings with Mr. Agati, respondent's lack of candor violated his duty to the public to maintain his personal integrity.

*State of mind:* Initially, respondent's misconduct was due to negligence. However, after March of 1992 and continuing for more than a year, respondent knowingly deceived his client and knowingly failed to represent him diligently.

*Injury:* We cannot determine whether Mr. Dyer, Jr. was actually injured financially by respondent's misconduct since no accounting of his interests and liabilities in the Vermont property was ever made. It may be that he was not entitled to any funds from the sale. However, since the converse might also be true, there was clearly a potential for serious financial injury.

*Mitigating factors:* Respondent experienced personal problems and physical impairment during some part of his representation of Mr. Dyer, Jr., has paid other penalties for his misconduct through the settlement of the malpractice suit, co-operated with these disciplinary proceedings, and is remorseful.

*Aggravating factors:* There were multiple offenses here, although we do not find a pattern of misconduct since only one client was involved. Mr. Dyer, Jr. was a vulnerable victim since he did not live in

Vermont and had few avenues of first-hand knowledge about his case.

Also, respondent has substantial experience in the practice of law as well as a prior disciplinary history. In 1991, we privately admonished respondent for violating DR 9-102(B)(3)(failing to maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them). *In re PCB File No. 90.20*, Decision No. 17 (1991). That violation occurred in 1989 and was the result of negligent, not knowing, misconduct.

Having considered the factors set out at Standard 3.0, we note that several sections* of the Standards apply. These sections support imposition of either a public reprimand or suspension from the practice of law.

Had there been any evidence of actual injury in this case, we would not hesitate to recommend that a lawyer who knowingly deceives his client as to the status of pending litigation should be suspended. However, the majority is mindful of the Supreme Court's position that suspension of lawyers for a period of less than six months is inappropriate. We feel that a suspension of that duration would be far too severe in this case. In this case the injury is speculative and was at least partially a product of respondent's medical disability. In such circumstances, we feel that a suspension would serve merely a punitive function.

Therefore, we follow the recommendation of both parties and recommend that

---

* As to violations of duties owed to the client, the following two sections provide, in pertinent part:

*4.4 Lack of Diligence*

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving a failure to act with reasonable diligence and promptness in representing a client:

4.42 Suspension is generally appropriate when:
    (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or
    (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

4.43 Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.

*4.6 Lack of Candor*

Absent aggravating or mitigating factors . . . the following sanctions are generally appropriate in cases where the lawyer engages in fraud, deceit, or misrepresentation directed toward a client:

4.62 Suspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client.

4.63 Reprimand is generally appropriate when a lawyer negligently fails to provide a client with accurate or complete information, and causes injury or potential injury to the client.

As to violations of the duty to the public to maintain personal integrity, absent aggravating or mitigating circumstances, the following section is applicable.

5.13 Reprimand is generally appropriate when a lawyer knowingly engages in . . . conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law.

respondent be publicly reprimanded. We do so with the expectation that such a sanction will fully protect the public from further misconduct.

## DISSENTING OPINION

In our view, this case is on all fours with ABA Standard 4.62 which mandates suspension in cases when a lawyer knowingly deceives a client and causes injury or potential injury to a client. There is no dispute that there was knowing deceit and the potential for significant injury here. Although we feel this should not be a long-term suspension, we feel that the stipulated facts warrant a sanction stronger than a public reprimand.