**In re Norman R. BLAIS**

[817 A.2d 1266]

No. 02-086

¶ 1. December 19, 2002. Respondent Norman Blais appeals from the recommendation of the Hearing Panel of the Professional Responsibility Board that he be suspended from the practice of law for a period of five months as a result of repeated instances of neglect of client matters and misrepresentation. Respondent puts forth three arguments: (1) the period of suspension recommended by the Hearing Panel is inconsistent with recent decisions of this Court involving similar conduct; (2) the sanction agreed between respondent and disciplinary counsel is more than sufficient to protect the public; and (3) the Hearing Panel's recommendation of a five-month suspension is founded on unproved facts and a mischaracterization of the record. We adopt the Hearing Panel's decision and suspend respondent for a period of five months.

¶ 2. Respondent has been a licensed attorney in the State of Vermont since 1976. In June 2001, respondent was charged with misconduct consisting of five instances of neglecting client matters and three instances of misrepresentation.* The parties stipulated to the facts of the misconduct before the Hearing Panel, and the Hearing Panel also made additional findings of fact. These facts are summarized below.

¶ 3. PRB File No. 1998.033 — In the fall of 1994, respondent was hired by Guy and Dianne Henning to pursue a personal injury claim against the parents of a child who had injured their daughter

---

* All of these incidents took place prior to September 1, 1989; thus the Vermont Code of Professional Responsibility applies.

during a Youth Soccer Association-sponsored game in October 1994. Respondent was also hired to file a medical claim under the policy carried by the soccer association. Respondent neglected to file the medical claim within ninety days of the injury, as required by the policy. Payment under the policy was later denied when new counsel took over the case in the summer of 1997 and presented the claim to the soccer association. In July 1996, during a meeting to review and sign the superior court complaint, respondent told the Hennings that he would file the complaint with the court, which he failed to do. During the next year, respondent on several occasions told the Hennings that the case would take more time and that the court docket moved slowly. He never filed the claim with the court, however, nor did he tell the Hennings that he had not filed the claim. In the summer of 1997, the Hennings hired new counsel who eventually brought the personal injury claim to a successful conclusion. Respondent's neglect and misrepresentations between the fall of 1994 and the summer of 1997 exposed his clients to potentially serious injury, but no actual injury resulted other than his clients' anxiety.

¶ 4. PRB File No. 1999.043 — In the summer of 1994, respondent was hired to represent Andrew Henry in connection with two charges of DWI. In February 1995, with respondent's assistance, Mr. Henry pled guilty to the first DWI, and the second DWI was dismissed. After the term of suspension for the first DWI ended, the Department of Motor Vehicles failed to reinstate Mr. Henry's driver's license. Respondent agreed to represent Mr. Henry in this matter, and accepted a retainer for that purpose. Respondent failed to take action on the matter, however, and Mr. Henry eventually hired new counsel who was able to obtain reinstatement of Mr. Henry's license in January 1999. Respondent returned his retainer. Due to respondent's inaction

from the summer of 1995 through November of 1998, Mr. Henry was without a driver's license from about April 1995 until January 1999 and suffered a resulting impairment of his employment opportunities.

¶ 5. PRB File No. 2000.042, Count I — In April 1987, Ulla Anderson Kauffman hired respondent to represent her in a claim for injuries resulting from a car accident in 1986. On several occasions, respondent assured Ms. Kauffman that her claim was proceeding appropriately and gave her the impression that progress was slow because the court docket was crowded. Respondent neglected the matter, however, and allowed the statute of limitations for the claim to expire. Ms. Kauffman ultimately filed a malpractice action against respondent and received compensation for her injuries from respondent's malpractice insurance carrier. Respondent's neglect and misrepresentations from the spring of 1987 until late 1990 or early 1991 exposed his client to potentially serious injury, but no actual injury resulted other than delay in the payment of the claim.

¶ 6. PRB File No. 2000.042, Count II — In 1988, Marjorie Bicknell hired respondent to represent her in a divorce action in which the property settlement was the main contested issue. In 1989, respondent told Ms. Bicknell that he would arrange for an appraisal of the parties' house but he failed to do so. Respondent eventually obtained a property settlement for Ms. Bicknell without having gotten an appraisal. Respondent's neglect exposed his client to potential injury. The Hearing Panel was unable to determine whether actual injury had occurred because the client ultimately agreed to proceed without an appraisal in order to expedite the divorce so she could remarry.

¶ 7. PRB File No. 2000.042, Count III — In 1990, Ms. Bicknell hired respondent to represent her and her sister in a personal injury claim arising from a car accident in 1989. Respondent neglected the matter, failed to return telephone calls to his client, and allowed the statute of limitations for the claim to expire. On more than one occasion, respondent falsely assured Ms. Bicknell that her claim was proceeding appropriately. Ms. Bicknell and her sister later filed a legal malpractice claim against respondent and received a settlement through that process. Respondent's neglect and misrepresentations from the fall of 1990 to December 1992 exposed his client to potentially serious injury, but no actual injury resulted other than delay in the payment of her claim.

¶ 8. In addition to the stipulation of facts and a joint recommendation as to conclusions of law concerning the particular violations of DR 6-101(A)(3) (neglecting a matter entrusted to the lawyer) and DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), respondent and the Office of Disciplinary Counsel agreed to a sanction recommendation of two months' suspension followed by a probationary period of eighteen to thirty-six months. The Hearing Panel accepted the parties' stipulations of fact and adopted the joint recommendation as to conclusions of law concerning the particular violations of DR 6-101(A)(3) and DR 1-102(A)(4), but did not adopt the recommended sanction. Instead, after a hearing at which respondent and two of his former clients testified, the Panel imposed a suspension of five months, to be followed by a probationary period of eighteen to thirty-six months. Respondent now appeals only the duration of the suspension.

¶ 9. On review, this Court must accept the Panel's findings of fact unless they are clearly erroneous. *In re Karpin*, 162 Vt. 163, 165, 647 A.2d 700, 701 (1993); A.O. 9, Rule 11(E). The Panel's findings, "whether purely factual or mixed law and fact, are upheld if they are 'clearly and reasonably supported by the evidence.'"

*In re Anderson*, 171 Vt. 632, 634, 769 A.2d 1282, 1284 (2000) (mem.) (quoting *In re Berk*, 157 Vt. 524, 527, 602 A.2d 946, 947 (1991)). This Court makes its own determination as to which sanctions are appropriate, but we nevertheless give deference to the recommendation of the Hearing Panel. *Id.*; see also *Karpin*, 162 Vt. at 173, 647 A.2d at 706 ("Although the Board's recommended sanction of disbarment is not binding upon this Court, it is accorded deference.").

¶ 10. Respondent first argues that the period of suspension recommended by the Hearing Panel is inconsistent with recent decisions of this Court involving similar conduct. Respondent contends that facts similar to those of the present case — the type of conduct, neglect and misrepresentation; the lack of permanent harm to clients; and the particular mitigating and aggravating factors — have previously led this Court to issue only a public reprimand as opposed to a suspension. See *In re Wenk*, 165 Vt. 562, 678 A.2d 898 (1996) (mem.); *In re Cummings*, 164 Vt. 615, 669 A.2d 555 (1995) (mem.); *In re Bucknam*, 160 Vt. 355, 628 A.2d 932 (1993) (per curiam). We disagree.

¶ 11. The Hearing Panel, considering factors listed in §§ 9.22 and 9.32 of the American Bar Association's Standards for Imposing Lawyer Sanctions (1991) (ABA Standards), see *In re Warren*, 167 Vt. 259, 261, 704 A.2d 789, 791 (1997) (Court looks to ABA Standards for guidance when sanctioning attorney misconduct), found five aggravating factors and three mitigating factors established by the evidence. The five aggravating factors were: (1) two prior disciplinary offenses resulting in disciplinary orders in 1992 and 1997; (2) a dishonest or selfish motive, in that the neglect resulted from respondent's concern with bringing in money for himself and his firm; (3) a pattern of misconduct; (4) multiple offenses in this case involving five separate matters; and (5) substantial experience in the practice of law. The three mitigating factors were: (1) personal or emotional problems stemming from respondent's divorce and the breakup of his law firm; (2) a cooperative attitude toward the disciplinary proceedings; and (3) a delay in disciplinary proceedings through no fault of respondent.

¶ 12. These aggravating and mitigating factors distinguish the present case from *Cummings* and *Bucknam*, cited by respondent. The respondent in *Cummings* had no prior disciplinary history and was sanctioned for neglect and misrepresentation in two client matters; the respondent in the present case has two prior disciplinary matters, and the instant matter involves five separate client matters. The respondent in *Bucknam* similarly had no prior disciplinary record, and the matter involved a fee dispute, not a neglect of client matters.

¶ 13. The *Wenk* case cited by respondent concerned only the second of three disciplinary proceedings involving attorney Wenk, all of which were based upon neglect and misrepresentation. While the first resulted in a private reprimand, and the second in a public reprimand, the third led to a six-month suspension that was not appealed. This third disciplinary proceeding was similar to the one before us. See PCB Decision No. 14 (Oct. 16, 2000). The misconduct in both involved neglect of a client matter coupled with misrepresentations that the suit was proceeding. In *Wenk*, the misconduct resulted in no serious injury to the client; in this case, most, but not all, of the misconduct resulted in no serious client injury. Both respondents had previous disciplinary history, and both were experiencing personal problems during the period of the charged conduct. Unlike respondent here, Mr. Wenk did not cooperate with the proceedings and showed no remorse for his actions. On the other hand, Mr. Wenk was charged with neglecting only one client matter, while respondent here was charged with neglecting five.

¶ 14. Also instructive is the recent Hearing Panel disciplinary decision involving attorney David Sunshine. See PRB Decision No. 28 (Dec. 5, 2001); see also A.O. 9, Rule 11(D)(5)(c) ("If no appeal [of the Hearing Panel's decision] is . . . filed . . . and the Court does not otherwise order review on its own motion, the decision shall become final, and shall have the same force and effect as an order of the Court."). There, Mr. Sunshine was similarly charged with neglecting two client matters and making misrepresentations to one of the clients concerning the status of his case. Like respondent in the present case, Mr. Sunshine had substantial experience in the practice of law, suffered personal difficulties stemming from the breakup of his firm, was remorseful for his conduct, and cooperated with the disciplinary process. Unlike respondent, however, Mr. Sunshine had no prior disciplinary history and neglected only two matters. Mr. Sunshine received a four-month suspension and a two-year period of probation. In light of the sanctions imposed in these recent disciplinary decisions, we find that the Hearing Panel's imposition of a five-month suspension is not inappropriate or inconsistent with Vermont precedent. See also ABA Standards § 4.42 ("Suspension is generally appropriate when: (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.").

¶ 15. Respondent next argues that the two-month suspension agreed upon by him and disciplinary counsel is more than sufficient to protect the public. Respondent contends that a five-month suspension would cause him to lose his secretary, an aspect of his practice that he claims has improved his handling of client matters, and that returning him to the practice of law with fewer organizational resources would act to the detri-ment, rather than the benefit, of the public. We cannot agree. This Court has cited approvingly the recommendation of the ABA Standards that a suspension should generally have a duration of at least six months. See *In re Rosenfeld*, 157 Vt. 537, 547, 601 A.2d 972, 978 (1991). "The rationale is that 'short-term suspensions with automatic reinstatement are not an effective means of protecting the public' because rehabilitation cannot be shown in less than six months and a six-month duration is needed to protect client interests." *Id.* (quoting ABA Standards 2.3, Commentary). But see *In re McCarty*, 164 Vt. 604, 605, 665 A.2d 885, 887 (1995) (mem.) (recognizing that "periods of suspension of less than six months are appropriate in some circumstances"). Given respondent's previous disciplinary history, the multiple offenses involved here, and respondent's admission that he no longer enjoys the practice of law, we agree with the Hearing Panel that a two-month suspension would be insufficient to provide respondent with the time to plan a new approach to his law practice and to consider whether he would be more satisfied pursuing some other profession. The ability to retain a secretary, assuming such ability exists based on this record, cannot be determinative.

¶ 16. Finally, respondent contends that the Hearing Panel's recommendation of a five-month suspension is founded on unproved facts and a mischaracterization of the record. Again, the Panel's findings of fact must be accepted by this Court unless they are clearly erroneous. *Karpin*, 162 Vt. at 165, 647 A.2d at 701; A.O. 9, Rule 11(E). We find the Hearing Panel's findings to be clearly and reasonably supported by the evidence, and thus we will not disturb them.

*Norman R. Blais is hereby suspended from the practice of law for a period of five months. The suspension will commence thirty days from the issuance of*

*this order to allow Mr. Blais to comply with A.O. 9, Rule 23. Following the period of suspension, Mr. Blais will be on probation in accordance with the terms set out in PRB Decision No. 31 (January 31, 2002).*