# ENTRY ORDER

## 2018 VT 35

## SUPREME COURT DOCKET NO. 2018-075

## MARCH TERM, 2018

| | | |
|---|---|---|
| In re Phyllis McCoy Jacien, Esq. | } | ORIGINAL JURISDICTION |
| | } | |
| | } | Professional Responsibility Board |
| | } | |
| | } | DOCKET NO. 2018-024 |

In the above-entitled cause, the Clerk will enter:

¶ 1.    Upon review of the hearing panel decision in this matter, the Court concludes as follows: The decision presents a well-reasoned discussion.  Accordingly, the Court orders review of the decision on its own motion, adopts the hearing panel decision in its entirety as a final order of this Court, waives briefing and oral argument, and orders that the decision be published in the Vermont Reports.

¶ 2.    Pursuant to Administrative Order 9, Rule 24, the Court appoints attorney Jess Schwidde "to inventory the files of the respondent, and to take action as seems indicated to protect the interests of . . . respondent's clients."

## STATE OF VERMONT
## PROFESSIONAL RESPONSIBILITY BOARD

In Re:  Phyllis McCoy Jacien, Esq.
PRB File No. 2018-024

Hearing Panel No. 5
Erin J. Gilmore, Esq., Chair
Michele Patton, Esq.
Christopher Bray

### Decision No. 212

On or about September 12, 2017, Disciplinary Counsel filed a Petition of Misconduct with the Professional Responsibility Board alleging that Respondent, Phyllis McCoy-Jacien, violated Rule 8(A)(6)(c) of Administrative Order ("A.O.") and Rule 8.1(b) of the Vermont Rules of Professional Conduct.  On or about September 15, 2017, the Petition was served on Respondent in person by the Rutland County Sheriff.  Exhibit DC-10.  The Petition included a notice of Respondent's obligation under A.O. 9, Rule 11(D)(3) to file an Answer to the Petition within 20

days. The Petition also included a notice, in accordance with Rule 11(D)(3), that failure to file a timely answer may result in the charges being admitted.

When Respondent failed to file a timely answer or to request an extension of time to file an answer, Disciplinary Counsel moved to have the charges admitted based on Respondent's failure to answer.[1] *See* Motion to Deem Charges Admitted, 10/11/18. Respondent did not file any response to the motion.[2] Accordingly, the Hearing Panel granted the Motion to Deem Charges Admitted and scheduled a hearing on the issue of sanctions.

On January 29, 2018, the Panel held a hearing to receive any evidence and oral argument on the issue of sanctions. Disciplinary Counsel, Sarah Katz, attended the hearing and presented both testimonial and documentary evidence. Respondent did not attend the hearing.[3]

Based on the allegations of the Petition and the evidence admitted at the sanctions hearing, the Panel issues the following findings of fact, conclusions of law, and order.

## FINDINGS OF FACT

On July 18, 2016, a hearing panel of the Professional Responsibility Board determined that Respondent had violated Rule 8.4(c) of the Vermont Rules of Professional Conduct by failing to file Vermont income tax returns for calendar years 2011, 2012, 2013, and 2014. *In re McCoy-Jacien, Esq.*, PRB File No. 2016-023, Decision No. 196, 7/18/16 ("PRB Decision 196"). The panel issued a public reprimand and further ordered that Respondent be placed on probation status

---

[1] Rule 11(D)(3) states as follow:

> [R]espondent shall serve his or her answer upon disciplinary counsel and file the original with the Board within 20 days after the service of the petition, unless the time is extended by the chair of the hearing panel. In the event the respondent fails to answer within the prescribed time, the charges shall be deemed to admitted, unless good cause is shown.

[2] Disciplinary Counsel certified that the Motion to Deem Charges Admitted was served on Respondent on October 11, 2017 by U.S. Mail sent to the address shown on Respondent's attorney licensing statement, in accordance with A.O. 9., Rule 14(B) and V.R.C.P. 5.

[3] The Panel's decision granting the motion to deem the charges admitted and notice of hearing was mailed to Respondent with a return receipt and Respondent signed the delivery box of the return receipt on December 24, 2017. Exhibit DC-11.

2

for a period of six months, during which time she was required to "timely file her 2015 tax return and file her 2011, 2012, 2013 and 2014 tax returns with the Vermont Tax Department." Exhibit DC-1, at 13. The Panel's order appointed Disciplinary Counsel to serve as the probation monitor and further stated that "[o]nce the aforesaid tax returns are completed and filed with the Tax Department, the purposes of probation shall have been satisfied." *Id.*

The Panel's decision was based on a stipulation of facts and a joint recommendation as to conclusions of law filed by Disciplinary Counsel and Respondent. In addition, the parties jointly requested the public reprimand and probationary conditions that were imposed by the Panel. *Id.* at 1.

In the absence of any communication from Respondent confirming that she had filed the requisite tax returns with the Vermont Department of Taxes, Disciplinary Counsel made several attempts to communicate with Respondent. On April 7, 2017, Disciplinary Counsel attached a letter addressed to Respondent to an email and attempted to send the email to the email address for Respondent that is on file in the Court Administrator's Office in connection with Respondent's attorney licensing records. *See* Exhibit DC-9. When the email was returned as undeliverable due to "[o]ver quota," Exhibit DC-2, Disciplinary Counsel sent the same letter by first-class mail to Respondent's last known mailing address on file in the Court Administrator's Office. Exhibit DC-3 (letter dated 4/10/17). The letter requested that Respondent provide documentation that she had filed the requisite tax returns or, alternatively, that she provide a date certain by which she would file the returns and an explanation for the delay. The letter further requested that Respondent provide her current mailing address, phone number, and email address. No response to the letter was received by Disciplinary Counsel.

On May 25, 2017, Disciplinary Counsel attempted to contact Respondent by telephone at the last known Vermont phone number used by Respondent. Disciplinary Counsel received an automated message without any identifying information and left a voice message requesting a call back. Disciplinary Counsel did not receive a call back from anyone in response to the voice mail

3

message. An attempt that same day to contact Respondent through a phone number for Respondent's Whitehall, New York law office was also unsuccessful. There was no response to the phone call or opportunity to leave a message.

In addition, Disciplinary Counsel contacted an individual who she understood had performed Certified Public Accountant services in the past for Respondent and asked him whether he could advise her to contact Disciplinary Counsel. This individual told Disciplinary Counsel that he would reach out to Respondent.

On June 6, 2017, having received no communication from Respondent, Disciplinary Counsel sent a letter to Respondent, by certified mail, using the Respondent's mailing address on file at the Court Administrator's Office. Exhibit DC-6. The letter identified Respondent's obligations under the July 18, 2016 Order in PRB Decision 196, summarized Disciplinary Counsel's prior attempts to contact Respondent, and advised Respondent that Disciplinary Counsel would proceed to present charges for a probable cause determination unless Respondent contacted Disciplinary Counsel by June 30, 2017. The certified letter was returned with a marking by the post office of "unclaimed" and "unable to forward." Exhibit DC-7.

Over the summer of 2017, Respondent was a party in a proceeding that was pending in Rutland Family Division entitled *Phillis McCoy Jacien v. Charles Jacien*, Docket No. 455-11-16 Rdfa. In connection with that proceeding, Respondent submitted to the Rutland Family Division, for purposes of receiving rulings and notices, the same mailing address that was – and continues to be – on file at the Court Administrator's Office and the Vermont phone number that Disciplinary Counsel used previously in attempting to contact Respondent. At the request of Disciplinary Counsel, the docket clerk in the Family Division telephoned Respondent on July 11, 2017 using the Vermont telephone number; spoke to Respondent on the telephone; and in the course of the conversation confirmed that Respondent's mailing address remained the same as the one on file with the Family Division and Court Administrator's Office.

4

On July 11, 2017, immediately following the phone conversation between the Family Division docket clerk and Respondent, Disciplinary Counsel placed a telephone call to the same phone number that the docket clerk had just utilized; spoke to a young child who answered the phone; and left a message with Disciplinary Counsel's name and phone number, advising that Respondent should call back. Disciplinary Counsel did not receive any call back or written communication of any kind in response to her message.[4]

In her capacity as the probation monitor under the order in PRB Decision 196, Disciplinary Counsel has also endeavored to obtain information from the Department of Taxes that would shed light on whether Respondent has filed her Vermont tax returns. Disciplinary Counsel has only been able to obtain limited information from the Tax Department. On May 26, 2017 and December 12, 2017, respectively, in response to inquiries from Disciplinary Counsel, the Department of Taxes advised Disciplinary Counsel, pursuant to 32 V.S.A. §§ 3102(e)(10) and 3113(f), that it was "unable to issue a letter of good standing with respect to [Phyllis McCoy Jacien] at this time." Exhibits DC-4 & DC-5. A Department of Taxes representative also testified at the sanctions hearing that as of the date of the hearing – January 29, 2018 – the Department continued to be unable to issue a letter of good standing for Respondent, and the Panel so finds.[5] No other

---

[4] Without question, Disciplinary Counsel explored every possible means of contacting Respondent before proceeding with charges in this matter and is to be commended for her efforts.

[5] While the Department's inability to certify "good standing" does not necessarily confirm that Respondent has failed to file her income tax returns – it could in theory indicate that while returns were filed the payment of taxes are delinquent – a certification of "good standing" would have called into question whether Respondent had failed to file the returns. Moreover, the absence of good standing may be the result of a failure to file tax returns. Section 3102 of Title 32 of the Vermont Statutes Annotated renders tax returns and related information confidential, subject to certain exceptions. Section 3102(e)(10) provides for limited disclosures of tax information, in the discretion of the Commissioner, for purposes of investigating whether a licensee is "in good standing with respect to or in full compliance with a plan to pay any and all taxes due." In addition, section 3113(b) requires that licensees certify that they are in good standing as a condition of licensure. Section 3113(g) provides, in pertinent part, that "[f]or purposes of this section, a person is in good standing with respect to any and all taxes payable if . . . no taxes are due and payable *and all returns have been filed*." 32 V.S.A. § 3113(g)(1) (emphasis added). Thus, a failure to file a tax return, by itself, can result in a declaration by the Department of Taxes that a taxpayer is not in good standing.

information was provided. In sum, Disciplinary Counsel has not been able to confirm that Respondent was in good standing with respect to her tax obligations.

Disciplinary Counsel proceeded to file two charges of misconduct against Respondent in September 2017. One charge alleged that Respondent violated A.O. 9, Rule 8(A)(6)(c) by "fail[ing] to file Vermont tax returns as directed under PRB Order 196." Petition of Misconduct at 1. The second charge alleged that Respondent violated Rule of Professional Conduct 8.1(b) by "fail[ing] to respond to numerous written and oral requests for information regarding compliance with probation conditions." *Id*. Disciplinary Counsel subsequently moved to have the charges deemed admitted for failure to respond. In the absence of any response to the motion, the Panel issued an order deeming the two charges admitted and scheduled a sanctions hearing. Accordingly, the Panel finds that Respondent did in fact commit the two violations alleged in the Petition.

On December 24, 2017, Respondent signed a return receipt acknowledging delivery to her of a copy of this Panel's December 14, 2017 Decision on Motion to Deem Charges Admitted and Notice of Hearing. The certified mail return indicates that Respondent signed for the delivery on December 24, 2017. *See* Exhibit DC-11.

Disciplinary Counsel has not received any telephone call or written communication of any kind in response to the various attempts that have been made to communicate with Respondent. Respondent has not appeared in this disciplinary proceeding. Respondent has not provided to the Professional Responsibility Program any affidavit pursuant to A.O. 9, Rule 8(A)(6)(b) demonstrating compliance with the conditions of probation that were imposed in PRB Decision 196 – namely, the requirement to file income tax returns with the Vermont Department of Taxes.

## CONCLUSIONS OF LAW

Respondent was notified of the charges against her and has not contested them. Accordingly, the Panel deems the charges to have been admitted.

A.O. 9 provides that "[d]iscipline may be imposed for . . . [v]iolation of any . . . order of a hearing panel . . . ." A.O. 9, Rule 7(C). The Rules further provide that a probation violation "may be the basis for . . . independent disciplinary charges," and that "[u]pon proof of a probation violation, any sanction under these rules may be imposed." A.O. 9, Rule 8(A)(6)(c). Respondent has committed a violation of a condition of her probation imposed in PRB Decision 196 by failing to file her income tax returns with the Vermont Department of Taxes.[6] Moreover, the violation is not isolated but, rather, continuing in nature.

In addition, Respondent committed multiple violations of Rule 8.1(b) of the Vermont Rules of Professional Conduct by failing to respond to numerous written and oral requests for information regarding compliance with the probation condition in PRB Decision 196 that required Respondent to file tax returns with the Vermont Department of Taxes. Rule 8.1 provides, in pertinent part, that "a lawyer . . . in connection with a disciplinary matter shall not . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority . . . ." V.R.Pr.C. 8.1(b).

Disciplinary Counsel repeatedly communicated with Respondent seeking documentation that Respondent had filed the requisite tax returns or, alternatively, an explanation for why Respondent had not done so and a proposed schedule to complete the filings. These demands for information were made using contact information that Respondent provided to the Court Administrator's Office and the Family Division of the court system. Respondent was obligated to respond to these requests. *See, e.g., Attorney Grievance Commission v. Lewis*, 85 A.3d 865, 874

---

[6] The Panel notes that when a respondent is defending against a charge of violation of probation it is necessary for Disciplinary Counsel to demonstrate the violation by clear and convincing evidence. *See* A.O. 9, Rule 8(A)(6)(c). But where the charges have been deemed admitted based on Respondent's default there is no need for the Panel to evaluate the relative probative value of the factual material presented by Disciplinary Counsel in support of the charges. In any event, if the Panel were required to assess the relative strength of the factual basis for the charges, the Panel would conclude that there was sufficient evidence presented, consisting of: (1) the inability of the Department of Taxes to certify that Respondent is in good standing with respect to her obligations as a taxpayer; and (2) the absence of any affidavit from Respondent indicating compliance with the terms of probation. *See* A.O. 9, Rule 8(A)(6)(b) ("Probation shall be terminated upon the filing of an affidavit by the respondent showing compliance with the conditions and an affidavit by the probation monitor stating that probation is no longer necessary . . .").

7

(Md. Ct. App. 2014) (respondent violated Rule 8.1(b) each time he failed to respond to letters, emails, and voice mail messages from disciplinary counsel and investigator).

The Panel concludes that Respondent knowingly failed to respond to these inquiries. Disciplinary Counsel was able to confirm Respondent's mailing address and phone number through the successful contact made by the docket clerk of the Family Division. Moreover, the certified return receipt accompanying the Panel's Decision on the Motion to Deem Charges Admitted and Notice of Hearing, which bears Respondent's name and signature, further confirms that the mailing address used repeatedly by Disciplinary Counsel in her attempt to contact Respondent was accurate.

Under Vermont law, "when a letter, properly addressed, is mailed there is a presumption of its receipt in due course." *Mary Fletcher Hosp. v. City of Barre*, 117 Vt. 430, 431, 94 A.2d 226, 228 (1953). Thus, even assuming Respondent did not actually receive the voice mail messages left for her by Disciplinary Counsel, there is a presumption that the April 10, 2017 letter was received by Respondent.

In addition, Respondent failed to respond to Disciplinary Counsel even after having been served personally by the sheriff with the Petition of Misconduct – which included allegations that she had failed to respond to requests for information – and after acknowledging delivery on December 24, 2017 of the Panel's decision deeming the charges admitted and scheduling the sanctions hearing. Simply put, Respondent could not claim that she acted without knowledge. And, in any event, Respondent admitted the violation of Rule 8.1(b) by failing to contest the Petition.

In sum, Respondent has repeatedly violated Rule 8.1(b) and continues to be in violation of Rule 8.1(b) at this time.

## SANCTIONS DETERMINATION

The Vermont Rules of Professional Conduct "are 'intended to protect the public from persons unfit to serve as attorneys and to maintain public confidence in the bar.'" *In re PRB*

8

*Docket No. 2006-167*, 2007 VT 50, ¶ 9, 181 Vt. 625, 925 A.2d 1026 (quoting *In re Berk*, 157 Vt. 524, 532, 602 A.2d 946, 950 (1991)).  The purpose of sanctions is not "to punish attorneys, but rather to protect the public from harm and to maintain confidence in our legal institutions by deterring future misconduct."  *In re Obregon*, 2016 VT 32, ¶ 19, 201 Vt. 463, 145 A.3d 226 (quoting *In re Hunter*, 167 Vt. 219, 226, 704 A.2d 1154, 1158 (1997)); *see also* ABA Center for Professional Responsibility, *Standards For Imposing Lawyer Sanctions* (1986) (amended 1992) (*"ABA Standards"*), Purpose and Nature of Sanctions, § 1.1 at 19 ("The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession.").

## Applicability of the ABA Standards for Imposing Lawyer Sanctions

Hearing Panels are guided by the ABA Standards when determining appropriate sanctions for violation of the Vermont Rules of Professional Conduct:

> When sanctioning attorney misconduct, we have adopted the *ABA Standards for Imposing Lawyer Discipline* which requires us to weigh the duty violated, the attorney's mental state, the actual or potential injury caused by the misconduct, and the existence of aggravating or mitigating factors.

*In re Andres*, 2004 VT 71, ¶ 14, 177 Vt. 511, 857 A.2d 803 (mem.).

Depending on the importance of the duty violated, the level of the attorney's culpability, and the extent of the harm caused, the standards provide a presumptive sanction.  *See* V.R.Pr.C., Scope, ¶ 19 (explaining that severity of sanction "depend[s] on all the circumstances, such as the willfulness and seriousness of the violation, extenuating factors and whether there have been previous violations").  The presumptive sanction can then be altered depending on the existence of aggravating or mitigating factors."  *In re Fink*, 2011 VT 42, ¶ 35, 189 Vt. 470, 22 A.3d 461.

## The Duty Violated

The nature of the duty violated by a lawyer helps to inform the applicable sanctions standard.  The ABA Standards "assume that the most important ethical duties are those obligations

which a lawyer owes to clients." *ABA Standards*, Part II, Theoretical Framework, at 5. Other duties recognized by the ABA Standards are owed to the general public, the legal system, and the legal profession. *Id.*

Respondent's continuing failure to file her income tax returns, as required by PRB Decision 196, is a violation of Respondent's duty owed to the public. As the hearing panel observed when it concluded in PRB Decision 196 that Respondent had violated Rule 8.4(c) of the Vermont Rules of Professional Conduct, the failure to file income tax returns is a crime under 32 V.S.A. § 5894(b) and reflects adversely on a lawyer's fitness to practice law. Respondent's violation of Rule 8.4(c) breached a duty to the public to maintain the highest standard of integrity. *See* PRB Decision 196, 7/18/16, at 13; *see also ABA Standards*, Part II, Theoretical Framework, at 5 (duties to the general public encompass the expectation that lawyers "exhibit the highest standards of honesty and integrity"). Respondent's violation of the terms of the condition of probation that was designed to correct Respondent's violation essentially continues the same violation under Rule 8.4(c) and, therefore, breaches the same duty to the public.

Respondent's failure to respond to Disciplinary Counsel's inquiries violated a duty to the legal profession. *See id.* at 6 (the duties associated with Model Rule 8.1 "are not inherent in the relationship between the professional and the community," but rather implicate an ethical concern for "maintaining the integrity of the profession").

### Mental State

The second factor to be considered is the lawyer's mental state. "The lawyer's mental state may be one of intent, knowledge, or negligence." *ABA Standards*, § 3.0, Commentary, at 27. "[W]hen assessing a lawyer's mental state for purposes of imposing sanctions, we look to his state of mind relative to the consequences of his misconduct rather than the duty violated." *See, e.g.*, *In re Disciplinary Proceeding Against Eugster*, 209 P.3d 435, 448 (Wa. 2009).

For purposes of the sanctions inquiry, "[a lawyer's] mental state is [one] of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result." *ABA*

10

*Standards*, Part II, Theoretical Framework, at 6. The mental state of "knowledge" is present "when the lawyer acts with conscious awareness of the nature or attendant circumstances of his or her conduct [but] without the conscious objective or purpose to accomplish a particular result." *Id*. The mental state of "negligence" is present "when a lawyer fails to be aware of a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." *Id*.; *see also id*., Part III, Black Letter Rules and Commentary, Definitions, at 19 (definitions of "intent," "knowledge," and "negligence").

The distinction between "knowing" and "negligent" misconduct has been explained as follows: "[W]as the lawyer aware of the circumstances that formed the basis for the violation? If so, the conduct was done knowingly. If the lawyer instead acted without awareness, but below the accepted standard of care, then he acted negligently. Application of these definitions is fact-dependent." *In re Fink*, 2011 VT 42, ¶ 38.[7]

The Panel concludes that Respondent's mental state was that of "knowledge." Respondent stipulated to the entry of the order in PRB Decision 196 and, therefore, was aware of her obligation under the order to file the tax returns and failed to take action.

Moreover, as described above, Respondent was reminded of her obligation to file the tax returns by her receipt of the April 10, 2017 letter from Disciplinary Counsel, as well as by the personal service on her of the Petition of Misconduct and her receipt in December 2017 by certified mail of the Panel's ruling that granted the motion to deem the charges admitted and that scheduled the sanctions hearing. For all these reasons, the Panel concludes that Respondent knew that she was failing to file the requisite tax returns and knowingly failed to respond to Disciplinary Counsel's demands for information.

---

[7] Moreover, "[t]he line between negligent acts and acts with knowledge can be fine and difficult to discern . . . ." *Id*.

**Injury and Potential Injury**

The ABA Standards require the Hearing Panel to consider "the actual or potential injury caused by the lawyer's misconduct." *ABA Standards*, § 3.0(c), at 26. The term "injury" is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury." *Id.*, Part III, Definitions, at 9. The term "potential injury" refers to harm that is "reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct." *Id.* Under the ABA Standards, "[t]he extent of the injury is defined by the type of duty violated and the extent of actual or potential harm." *Id.*, Part II, Theoretical Framework, at 6.

This case does not involve any injury to a client. Moreover, it is not known whether or not Respondent owes any taxes and, if so, in what amount.[8] Nevertheless, the general public and the profession have been harmed by Respondent's conduct and continue to be harmed while these violations continue. A lawyer's failure to file income tax returns calls into question the integrity of the offending attorney and the profession at large in the eyes of the public. Likewise, Respondent's failure to cooperate with Disciplinary Counsel's investigation "injured the disciplinary system itself by consuming scarce resources and eroding the public's confidence in the legal profession." *In re Hongisto*, 2010 VT 51, ¶ 11, 188 Vt. 553, 998 A.2d 1065.

**Presumptive Standard under the ABA Standards**

The Panel concludes that § 7.2 of the ABA Standards is applicable in this case. It states as follows: "Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the

---

[8] Because of Respondent's failure to file the tax returns in question, the general confidentiality provisions surrounding tax-related information, and the limitation on information available from the Department of Taxes, it is not possible to determine whether Respondent owes any taxes or not.

public or the legal system." *ABA Standards*, § 7.2. Respondent has knowingly engaged in conduct that violates her duty to maintain personal integrity by continuing her failure to file the requisite income tax returns while also failing to respond to inquiries from Disciplinary Counsel and, as a result, has caused injury to the public.[9]

Although Disciplinary Counsel does not address § 8.2 of the ABA Standards, the Panel concludes that it is also pertinent. It provides as follows:

> Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.

*Id*. § 8.2.

Respondent has disregarded her obligation under the prior disciplinary decision that directed her to file her income tax returns as a condition of her probation, thereby engaging in further violations that harm the public. She was publicly reprimanded for her conduct in the prior decision. Her disregard of the prior decision now justifies a suspension.

On its face, the standard that provides for the more severe sanction of disbarment might be considered applicable in this case. It provides, in pertinent part, as follows:

> Disbarment is generally appropriate when a lawyer intentionally or *knowingly violates the terms of a prior disciplinary order* and such violation causes injury or potential injury to a client, the public, the legal system, or the profession . . . .

*Id*. § 8.1(a) (emphasis added).

Here, the Panel has concluded that Respondent knowingly violated the express terms of a prior disciplinary order with resulting injury to the public. However, the Panel concludes that the less severe sanction of suspension under § 8.2 is more appropriate in this case. Various jurisdictions have recognized the principle of "gradual gradation" that favors the imposition of

---

[9] The Panel concludes that it should not apply the standard in § 7.1 that provides for disbarment when the lawyer engages in such conduct "with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system." Even leaving aside the question of the degree of injury caused by Respondent, there is no evidence in this case that Respondent has sought to benefit herself through her conduct.

13

graduated sanctions over successive disciplinary actions in cases under § 8.0, depending on the severity of the conduct and provided the public is protected. *See, e.g., In re Davis*, 889 P.2d 621, 624 (Ariz. 1995) ("Regarding the discipline of a lawyer previously sanctioned, we have determined that a graded response from reprimand, to suspension, to disbarment is sometimes appropriate, depending on the severity of the subsequent conduct.") (quotation omitted). In *Davis*, the respondent had been previously reprimanded for misconduct and subsequently violated the terms of her probation and failed to cooperate with the disciplinary authorities. Citing the "graded response" principle, the Court imposed a suspension under the standard in § 8.2. *Id*. at 624.

The Panel concludes that a graduated sanction of suspension, as opposed to disbarment, is more appropriate in this case in light of the fact that the misconduct involves a term of probation and does not involve any harm to any client. Respondent was previously reprimanded. Her continued violation of the probation order merits a suspension. In sum, § 8.2 is pertinent and calls for suspension as a presumptive standard.[10]

The ABA Standards state that when there are multiple instances of misconduct, "[t]he ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct among a number of violations . . . ." *ABA Standards*, Part II, Theoretical Framework, at 7. In sum, the Panel concludes that suspension is the appropriate presumptive sanction.

### Aggravating and Mitigating Factors Analysis

Having concluded that suspension is the presumptive sanction that applies in this case, the Panel must consider any aggravating and mitigating factors and whether they call for a lesser or

---

[10] It should be noted that in *Davis* the Court rejected, even in the absence of any harm to a client, the respondent's request for extension of the probationary terms as an alternative to suspension, reasoning as follows: "Merely extending the probation or adding additional terms would not provide her or other lawyers with a meaningful indication of the seriousness of violating probationary terms and ignoring the State Bar's information requests." *Id.* The Panel endorses this same reasoning in concluding that a lesser sanction would not be appropriate in this case and that a suspension is the appropriate presumptive standard.

greater sanction than is presumed under the applicable standards. Aggravating standards are "any considerations, or factors that may justify an increase in the degree of discipline to be imposed." *ABA Standards*, § 9.21, at 50. Mitigating factors are "any considerations or factors that may justify a reduction in the degree of discipline to be imposed." *Id*. § 9.31, at 50-51. Following this analysis, the Panel must decide on the ultimate sanction that will be imposed in this proceeding.

### (a) Aggravating Factors

Section 9.22 of the ABA Standards sets forth a list of aggravating factors. *Id*. § 9.22, at 50. The following aggravating factors are present:

- § 9.22(a) (prior disciplinary offense) – Respondent was previously disciplined in PRB Decision 196.

- § 9.22(c) (a pattern of misconduct) – Respondent has engaged in a pattern of misconduct by repeatedly disregarding Disciplinary Counsel's requests for information and failing over an extended period of time to file her income tax returns with the Vermont Department of Taxes.

- § 9.22(i) (substantial experience in the practice of law) – Respondent was admitted to practice in 1989 and therefore has substantial experience in the practice of law.

- § 9.22(k) (illegal conduct) – The failure to file income tax returns is a crime under Vermont law. *See* 32 V.S.A. § 5894(b).

### (b) Mitigating Factors

Section 9.32 of the ABA Standards sets forth a list of mitigating factors. *ABA Standards,* § 9.32, at 51. Because Respondent did not participate in this proceeding, the Panel does not have the benefit of any evidence Respondent might have presented and there is no other evidence in the record in support of any mitigating factor.[11]

---

[11] The hearing panel in PRB Decision 196 found that a highly contentious divorce proceeding had contributed to Respondent's emotional stress and recognized a mitigating factor under § 9.32(c) on that basis. *See* PRB Decision 196, at 10-11. However, due to the passage of time since that decision issued in July 2016 – and the continuation of Respondent's failure to file the income tax returns and the subsequent

15

### (c) Weighing the Aggravating Mitigating Factors

The Panel concludes that the aggravating factors outweigh the mitigating factors. Therefore, there is no basis for imposing a less severe sanction. Suspension is appropriate. At the same time, the Panel does not view the disproportionate balance as justifying an upward adjustment to the sanction of disbarment. In sum, the Panel believes that a graduated response is appropriate in this case.

*       *       *

The ABA Standards state that "[g]enerally, suspension should be for a period of time equal to or greater than six months, but in no event should the time period prior to application for reinstatement be more than three years." *ABA Standards*, Part IV, Standards for Imposing Sanctions, at 20. The recommendation of a minimum length of suspension is persuasive but not binding on the Panel. *See, e.g., In re McCarty*, 164 Vt. 604, 605, 665 A.2d 885, 887 (1995) ("periods of suspension of less than six months are appropriate in some circumstances"); *In re Blais*, 174 Vt. 628, 631, 817 A.2d 1266, 1270 (2002) (five-month suspension plus probation imposed).

The Panel must ultimately determine the length of the suspension that will be imposed based on all the considerations presented. Having in mind that "[i]n general, meaningful comparisons of attorney sanction cases are difficult as the behavior that leads to sanction varies so widely between cases," *In re Strouse*, 2011 VT 77, ¶ 43, 190 Vt. 170, 34 A.3d 329 (Dooley, J., dissenting), the Panel has considered prior disciplinary determinations to inform its ultimate determination. The Court has imposed substantial suspensions in cases involving the failure to

---

failure to respond to Disciplinary Counsel's inquiries – the Panel cannot rely on the findings and conclusions in PRB Decision 196 to assess mitigating factors in this proceeding. The Panel also notes that Respondent was involved in a more recent dispute with her ex-husband in the Family Division, which commenced in April of 2017 and concluded with a merits decision in September 2017. *See* Exhibit DC-8 (redacted docket entries in *McCoy-Jacien v. Jacien*, Docket No. 455-11-16 Rdfa, Relief from Abuse Proceeding). However, in the absence of any testimony from Respondent, the Panel cannot draw any conclusion as to whether the dispute caused Respondent emotional problems that impacted the misconduct adjudicated in this disciplinary proceeding.

16

file income tax returns. *See, e.g., In re Free*, 159 Vt. 625, 625, 616 A.2d 1140, 1140 (1992) (six-month suspension); *In re Massucco*, 159 Vt. 617, 617, 613 A.2d 718, 718 (1992) (four-month suspension). More recently, in *In re Obregon*, 2016 VT 32, ¶ 26, 201 Vt. 463, 145 A.3d 226 (2016), the Court accepted a recommended sanction of a public reprimand for an attorney who failed to file income tax returns.

*Obregon* is readily distinguishable. That case did not involve a violation of probation. In addition, the panel relied heavily on the presence of compelling mitigating factors in selecting the lesser sanction. *Id.* Indeed, the Court deferred to the panel on that basis while at the same time noting that the respondent's conduct "could [have] warrant[ed] a suspension, especially because the conduct could have been charged as a crime and prior cases involved suspensions for similar conduct." *Id.*

The decisions in *Free* and *Massucco* involved less egregious behavior than is presented here. The respondents in those cases had come into compliance with their tax obligations at the time the sanction was imposed. *See In re Free*, 159 Vt. at 626 (panel finding that respondent had subsequently "paid all back taxes due, including all penalties and interest, and met all his current tax obligations under the laws of Vermont"); *In re Massucco*, 159 Vt. at 617 (same). In addition, those cases did not involve any failure to respond to requests for information from Disciplinary Counsel.

Based on the circumstances presented in this case, the Panel concludes that a longer suspension is appropriate. Respondent has violated the terms of probation set forth in an earlier disciplinary order and those violations are continuing. Moreover, Respondent has repeatedly disregarded Disciplinary Counsel's requests for information designed to ensure that she timely file her income tax returns. And those requests currently remain outstanding. The fact that the conduct in question – failure to file income tax returns – is a crime under Vermont law compounds these continuing violations. Under these circumstances a longer suspension than the ones imposed in *Free* and *Masucco* is appropriate.

17

Based on all of the foregoing considerations, the Panel will impose a nine-month suspension as a sanction. In addition, because Respondent will be required to apply for reinstatement if she wants to resume the practice of law, *see* A.O. 9, Rule 22(B) ("A lawyer who has been suspended for six months or longer shall comply with paragraph D of this rule."); *id.*, Rule 22(D) (requiring motions for reinstatement to be filed and specifying related procedures and standards for reinstatement); *id.*, the Panel will impose two additional conditions that will apply in the event of any application by Respondent for reinstatement: First, Respondent will have to demonstrate that she has fully complied with the terms of the July 18, 2016 Order issued in PRB Decision 196; and, second, because of her failure to appear and participate in this disciplinary proceeding, Respondent will also be required to provide a detailed explanation for her lack of participation. *See In re Hongisto*, 2010 VT 51, ¶ 19, 188 Vt. 553, 998 A.2d 1065 (requiring "detailed explanation" as a condition in connection with any application for reinstatement due to "failure to participate in any of these proceedings").[12]

## ORDER

It is hereby ORDERED, ADJUDGED and DECREED as follows:

1. Respondent, Phyllis McCoy-Jacien, Esq., has violated A.O. 9, Rule 8(a)(6)(C) and V.R.Pr.C. Rule 8.1(b), as set forth above;

---

[12] During the sanctions hearing, Disciplinary Counsel requested for the first time that the Panel award costs against Respondent as a further sanction, as provided in A.O. 9, Rule 8(A)(8). Rule 8 lists the assessment of costs along with other potential sanctions that may be considered by the hearing panel. *Cf.* V.R.C.P. 54(d)(1) (costs "shall be allowed as of course to the prevailing party . . . unless the court otherwise specifically directs"). Thus, an award of costs is discretionary under Rule 8(A)(8). In the typical civil case, requests for costs are submitted after a merits decision has been rendered, with an itemized list of costs and sufficient supporting documentation to allow the trier to evaluate the relevance and reasonableness of each item with respect to the litigation and to furnish proof that the cost was incurred. The Panel concludes that a post-decision motion is the best procedure to utilize when requesting costs. The Panel also wishes to point out that "costs" do not encompass "attorney's fees," *see State v. Whitingham School Board*, 140 Vt. 405, 409, 438 A.2d 394, 397 (1981), and that because Respondent did not defend against the charges any costs awarded in this proceeding would likely be limited. The Panel requests that, before deciding whether to proceed with a motion for costs, Disciplinary Counsel consider whether any likely recovery of costs would justify the time and effort (and related cost to the Professional Responsibility Program) that would be required to assemble a proper motion and to obtain an adjudication from the Panel.

2.  Respondent is suspended from the office of attorney and counselor at law for a period of nine (9) months effective from the date of this decision;

3.  In the event that Respondent files a motion seeking permission to resume the practice of law, she shall be required to demonstrate, as part of the proceeding under A.O. 9, Rule 22(D), that she has fully complied with the terms of the July 18, 2016 Order issued in *In re Phyllis McCoy-Jacien*, PRB Decision No. 196 (PRB File No. 2016-023); and

4.  In the event that Respondent files a motion seeking permission to resume the practice of law, she shall be required to provide, as part of the proceeding under A.O. 9, Rule 22(D), a detailed explanation for her lack of participation in this disciplinary proceeding.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

☒ Publish

☐ Do Not Publish

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

_____
Karen R. Carroll, Associate Justice

19